# TREAT v. WHITE.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND
CIRCUIT.

No. 227.   Argued April 10, 1901.—Decided April 29, 1901.

What is denominated "a call," in the language of New York stock brokers,
is an agreement to sell, and as the statutes of the United States in force
in May, 1899, required stamps to be affixed on all sales or agreements to
sell, the calls were within its provisions.

On September 18, 1899, S. V. White brought an action in
the Supreme Court of the State of New York against Charles H.
Treat, United States collector of internal revenue, to recover
the sum of $604, alleged to have been unlawfully exacted by
such collector. The action was removed to the United States
Circuit Court for the Southern District of New York, and a
judgment there rendered in favor of the plaintiff. 100 Fed.
Rep. 290. The case was taken to the United States Court of
Appeals for the Second Circuit, which, before any decision, cer-
tified a question to this court. The statement of facts and ques-
tion are as follows:

"From the 1st day of July, 1898, until the date of the com-
mencement of this action the defendant in error, Stephen V.
White, was doing business as a stock broker on the New York
Stock Exchange. In the course of his business White sold
'calls' upon 30,200 shares of stock, the said 'calls' being of
the same effect and tenor as Exhibit A, hereinafter set forth,
and only varying in the names of the stock, the date and the
price at which they were offered.

"Exhibit A.

"New York, May 18th, 1899.

"For value received the bearer may call on me on one day's
notice, except last day, when notice is not required. One hun-
dred shares of the common stock of the American Sugar Refin-

ing Company at one hundred and seventy-five per cent at any time in fifteen days from date. All dividends, for which transfer books close during said time, go with the stock. Expires June 2, 1899, at 3 P.M.

(Signed)        "S. V. WHITE.

"These 30,200 shares of stock, for which 'calls' at various times had been in existence, were, as matter of fact, never actually 'called,' and no stamp was put upon the same. The plaintiff in error, Charles H. Treat, United States collector of internal revenue, demanded of the defendant in error, Stephen V. White, the sum of six hundred and four dollars, which sum was the value of 30,200 internal revenue stamps of the denomination of two cents each.

"This sum of six hundred and four dollars was paid by the defendant in error, Stephen V. White, under protest. Subsequently the defendant in error demanded the return of the said six hundred and four dollars, but the demand was refused.

"Upon the facts set forth the question of law, concerning which this court desires the instruction of the Supreme Court for its proper decision, is:

"Is the above memorandum in writing, designated as Exhibit A, an 'Agreement to sell' under the provisions of section 25, Schedule A, act of Congress approved June 13, 1898, and, as such, taxable?"

The collector acted under the provision of section 25 of Schedule "A" of the War Revenue act of June 13, 1898, 30 Stat. 448, which reads as follows:

"On all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock in any association, company or corporation, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock or to secure the future payment of money or for the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents: *Provided,* That in

case of sale where the evidence of 'transfer is shown only by the books of the company the stamp shall be placed upon such books; and where the change of ownership is by transfer certificate the stamp shall be placed upon the certificate; and in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned shall show the date thereof, the name of the seller, the amount of the sale and the matter or thing to which it refers."

*Mr. Assistant Attorney General Beck* for Treat.

*Mr. Stephen V. White* in person for the defendant in error.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The question before us is simply one of statutory construction. Is a "call" (a copy of which is incorporated in the statement of facts) an agreement to sell, within the meaning of Schedule "A"? In reference to this the learned Circuit Judge, in delivering his opinion, said:

"It is an agreement, and manifestly an 'agreement to sell.' It may be referred to as an 'offer,' or an 'option,' or a 'call,' or what not, but it is susceptible of no more exact definition than 'an agreement to sell.' Inasmuch, therefore, as the statute requires stamps to be affixed 'on all sales, or agreements to sell,' it would seem that these 'calls' are within its provisions."

We fully agree with this definition. "Calls" are not distributed as mere advertisements of what the owner of the property described therein is willing to do. They are sold, and in parting with them the vendor receives what to him is satisfactory consideration. Having parted for value received with that promise it is a contract binding on him, and such a contract is neither more nor less than an agreement to sell and deliver at the time named the property described in the instrument. It

may be a unilateral contract. So are many contracts. On the face of this instrument there is an absolute promise on the part of the promisor and a promise to sell. We cannot doubt the conclusion of the Circuit Judge that this is in its terms, its essence and its nature an agreement to sell. Therefore it comes within the letter of the statute.

The defendant in error, who has argued in his own behalf with ability the questions presented, has referred in his brief to this rule of construction: that the duty of the court "is to take the words in their ordinary grammatical sense, unless such a construction would be obviously repugnant to the intention of the framers of the instrument, or would lead to some other inconvenience or absurdity." Sedgwick, Construction of Statutory and Constitutional Law, 220. With that rule of construction we are in entire sympathy, and approve of it. In the ordinary reading of this instrument no one would doubt that there was an agreement on the part of the promisor to sell at the time named the property therein described. That being the ordinary, natural, grammatical interpretation of the language, it is, as the learned Circuit Judge declared, neither more nor less than an agreement to sell. Why should not the ordinary meaning of the language in the statute be enforced in respect to this particular instrument? Certainly there must be some satisfactory reason for departing from the general rule of construction. It is also true, as said by this court in *United States* v. *Isham,* 17 Wall. 496, 504, "if there is a doubt as to the liability of an instrument to taxation, the construction is in favor of the exemption, because in the language of Pollock, C. B., in *Girr* v. *Scudds,* 11 Exchequer, 191, 'a tax cannot be imposed without clear and express words for that purpose.'" With that proposition we fully agree. There must be certainty as to the meaning and scope of language imposing any tax, and doubt in respect to its meaning is to be resolved in favor of the taxpayer. But when the language is clear a different thought arises.

We do not question the fact that there are times when the mere letter of a statute does not control, and that a fair consideration of the surroundings may indicate that that which is within the letter is not within the spirit, and therefore must be

excluded from its scope. *Church of the Holy Trinity* v. *United States,* 143 U. S. 457. But that proposition implies that there is something which makes clear an intent on the part of Congress against enforcement according to the letter. Nothing of that kind exists in this case. There is nothing to suggest that Congress did not mean that this provision should be enforced according to its letter and spirit everywhere. The defendant in error, in the course of his argument, says that Congress must be assumed to have been familiar with the ordinary modes of dealing on the Stock Exchange of New York, and that if it intended by its legislation to reach " calls," a term well understood in that exchange, it would have named them or used some word which necessarily includes them. But this takes for granted the question at issue and assumes that the words used do not include " calls." It is not to be assumed that Congress legislated with sole reference to transactions on stock exchanges, but its action is to be taken as having been exerted for the whole nation, and if it should so happen that dealings on any stock exchange come within the purview thereof, the parties so dealing are bound by it, and cannot claim an immunity from its burden. An isolated agreement to sell stock made by an individual in Austin, Texas, is an agreement to sell, subject to the stamp duty imposed. It is none the less an agreement to sell when made in the Stock Exchange of New York, as one of a multitude of similar transactions.

That there is a difference between an agreement to sell and an agreement of sale is clear. The latter may imply not merely an obligation to sell but an obligation on the part of the other party to purchase, while an agreement to sell is simply an obligation on the part of the vendor or promisor to complete his promise of sale. That Congress recognized the difference between these two terms is evident, because in the very next paragraph of Schedule " A " it provides, in reference to merchandise, for a stamp " upon each sale, agreement of sale, or agreement to sell." That no stamp duty was imposed on agreements to buy (or, in the vernacular of the stock exchange, " puts ") furnishes no ground for denying the validity of the stamp duty on agree-

ments to sell. The power of Congress in this direction is unlimited. It does not come within the province of this court to consider why agreements to sell shall be subject to stamp duty and agreements to buy not. It is enough that Congress in this legislation has imposed a stamp duty upon the one and not upon the other.

In conclusion, we may say that the language of the statute seems to us clear. It imposes a stamp duty on agreements to sell. "Calls" are agreements to sell. We see nothing in the surroundings which justifies us in limiting the power of Congress or denying to its language its ordinary meaning.

*Therefore we answer the question submitted to us by the Circuit Court of Appeals in the affirmative, and hold that a " call " is an agreement to sell, and taxable as such.*