**KITAGAWA v. SHIPMAN, County Treasurer, et al.**

**MANA TRANSP. CO., Limited, v. SAME.**

**Nos. 6454, 6455.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 7, 1931.

Leon B. Brown, of Los Angeles, Cal., and Carl S. Carlsmith, C. W. Carlsmith, and M. L. Carlsmith, all of Hilo, Hawaii, for appellants.

H. R. Hewitt, Atty. Gen., C. Nils Tavares and E. R. McGhee, Deputy Attys. Gen., and W. H. Beers, Co. Atty., and Deputy Atty. Gen., of Hilo, Hawaii, for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

These cases were consolidated by stipulation. Both involve the validity of a tax upon automobiles. It is claimed that the act of the Legislature of Hawaii imposing a tax upon automobiles by weight, in lieu of all other taxes (section 1306 of the Revised Laws of Hawaii, 1925, as amended by Act 180 of the Session Laws of Hawaii, 1925, and by Acts 33, 172, and 246 of the Session Laws of Hawaii, 1927), is in violation of the limitations of amendment 5 to the Constitution of the United States, for the reason that such taxation is a violation of due process of law within the meaning of the said Fifth Amendment, which, by the terms of the Organic Act, limits the power of the territorial Legislature. That act provides (section 5) as follows: "That the Constitution, and, except as otherwise provided, all the laws of the United States * * * which are not locally inapplicable, shall have the same force and effect within the said Territory as elsewhere in the United States."

Section 55 provides: "That the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable."

It is claimed by the appellant that the tax imposed by the state Legislature upon automobiles is a property tax and not an excise tax, for the reason that the tax is not imposed as a condition of the use of the highways. In the case of Kitagawa v. Shipman, No. 6454, it is alleged in the complaint that the appellant does not intend to use the automobiles taxed upon the public highway, but he also alleges that the automobiles in question are part of his stock of used cars which he is offering for sale to the public. In the case of Mana Transportation Company v. Shipman, No. 6455, it is alleged that the automobiles taxed are in actual use upon the public highways, and it is conceded that the Legislature has power to levy an excise tax based upon the weight of the machines so used, but the contention is that, notwithstanding the power to impose such a tax, the Legislature has not done so, but has instead levied a property tax, and that this act, being unconstitutional, is ineffective, not only against the automobiles held in storage, but also upon those used upon the public streets. There are many cases arising under state Constitutions limiting the power of the Legislature with reference to taxation which call for determination of the nature of the tax levied by the Legislature, and a discussion of the nature of the tax is not only germane to the issue, but often determinative of the validity of the statute.

In many states the Constitutions thereof require that property taxes be levied upon an ad valorem basis. Under such a constitutional limitation, it would be necessary to determine whether or not the tax in this case were a property tax, and therefore one required to be on an ad valorem basis, or whether authorized by some other branch of the taxing power. We are under no such restrictions in this case. The question involved is whether or not the taxation of automobiles by special classification thereof is so palpably arbitrary as to amount to a denial of due process of law within the meaning of that term as used in the Fifth Amendment to the Constitution of the United States. This was decided by the Supreme Court in Toyota v. Hawaii, 226 U. S. 184, 191, 33 S. Ct. 47, 48, 57 L. Ed. 180. There the court stated the situation as follows: "The remaining contention, urged in various forms by the assignments of error, comes to the single point that the statute created an arbitrary classification. It cannot be said, however, that there was no reasonable basis for a distinction between Honolulu and other districts. And it was the province of the legislature to decide upon the amount of the fees which should be charged. It must be assumed that in so deciding it took into account varying conditions in the respective localities; as, for example, in the amount of business transacted and in the corresponding value of such licenses. Necessarily, as was said in Magoun v. Ill. Tr. & Sav. Bk., 170 U. S. 283, 294, 18 S. Ct. 594, 42 L. Ed. 1037, 1043, the power of classification 'must have a wide range of discretion.' It is not reviewable 'unless pal-

pably arbitrary.' Orient Ins. Co. v. Daggs, 172 U. S. 557, 562, 19 S. Ct. 281, 43 L. Ed. 552, 554; Louisville & Nashville R. R. Co. v. Melton, 218 U. S. 36, 52–55, 30 S. Ct. 676, 54 L. Ed. 921, 927–929 [47 L. R. A. (N. S.) 84]; Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 55 L. Ed. 369, 377, Ann. Cas. 1912C, 160; Mutual Loan Co. v. Martell, 222 U. S. 225, 235, 32 S. Ct. 74, 56 L. Ed. 175, 179 [Ann. Cas. 1913B, 529]. With its intimate knowledge of local conditions, the supreme court of the territory said upon this point: 'The great bulk of the business of the territory is done in Honolulu. It is not for us to say whether we would make the difference in the amount of license fees in this case as large as the legislature has made it. It is sufficient that we cannot say that the difference is unreasonable, or that the statute is unequal or arbitrary in its operation.' * * * We find no ground for a different conclusion."

It should be borne in mind here that the law attacked is one enacted under the taxing power of the state. This is one of the most unlimited powers of government, and, in order that such a law may be successfully attacked as unconstitutional, it is necessary to point out the particular part of the Constitution limiting the taxing power which it is claimed is violated by the legislation in question. Chief Justice Marshall, in the celebrated case of McCulloch v. Maryland, 4 Wheat. (17 U. S.) 316, 428, 4 L. Ed. 579, said: "The power of taxing the people and their property, is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse."

Cooley, in his work on "Constitutional Limitations," states the character of the tax-ing power as follows: "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use, or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property. No attribute of sovereignty is more pervading, and at no point does the power of the government affect more constantly and intimately all the relations of life than through the exactions made under it."

The Supreme Court, in Hagar v. Reclamation District No. 108, 111 U. S. 701, 4 S. Ct. 663, 667, 28 L. Ed. 569, had occasion to consider the applicability of the due process of law clause of the Fourteenth Amendment to the Federal Constitution to a tax imposed under the law of the state of California for the purpose of reclaiming swamp and overflow lands. The court there said:

"Undoubtedly where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. As stated by Mr. Justice Bradley, in his concurring opinion in Davidson v. New Orleans [96 U. S. 97, 24 L. Ed. 616]: 'In judging what is "due process of law" respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law," but if found to be arbitrary, oppressive, and unjust, it may be declared to be not "due process of law."' The power of taxation possessed by the state may be exercised upon any subject within its jurisdiction, and

to any extent not prohibited by the Constitution of the United States. As said by this court: 'It may touch property in every shape, in its natural condition, in its manufactured form, and in its various transmutations. And the amount of the taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the federal constitution, the power of the state, as to the mode, form, and extent of taxation, is unlimited where the subjects to which it applies are within her jurisdiction.' State Tax on Foreign-held Bonds, 15 Wall. 300, 319 [21 L. Ed. 179].

"Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the tax-payer, nor would notice be of any possible advantage to him, such as poll-taxes, license taxes, (not dependent upon the extent of his business,) and, generally, specific taxes on things or persons or occupations. In such cases the legislature in authorizing the tax fixes its amount, and that is the end of the matter. If the tax be not paid the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the tax-payer. No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard or bushel or gallon there is nothing the owner can do which can affect the amount to be collected from him. * * *

"But where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, a different principle comes in."

In Brushaber v. Union Pac. R. R., 240 U. S. 1, 24, 36 S. Ct. 236, 244, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, it was said: "So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance, since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words,

that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. Treat v. White, 181 U. S. 264, 21 S. Ct. 611, 45 L. Ed. 853; Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; McCray v. United States, 195 U. S. 27, 61, 24 S. Ct. 769, 49 L. Ed. 78, 97, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U. S. 107, 158, 31 S. Ct. 342, 55 L. Ed. 389, 416, Ann. Cas. 1912B, 1312 [supra]; Billings v. United States, 232 U. S. 261, 282, 34 S. Ct. 421, 58 L. Ed. 596, 605. And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion. We say this because none of the propositions relied upon in the remotest degree present such questions. It is true that it is elaborately insisted that although there be no express constitutional provision prohibiting it, the progressive feature of the tax causes it to transcend the conception of all taxation and to be a mere arbitrary abuse of power which must be treated as wanting in due process. But the proposition disregards the fact that in the very early history of the government a progressive tax was imposed by Congress, and that such authority was exerted in some, if not all, of the various income taxes enacted prior to 1894 to which we have previously adverted. And over and above all this the contention but disregards the further fact that its absolute want of foundation in reason was plainly pointed out in Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969 [supra], and the right to urge it was necessarily foreclosed by the ruling in that case made. In this situation it is, of course, superfluous to say that arguments as to the expediency of levying such taxes, or of the economic mistake or wrong involved in their imposition, are beyond judicial cognizance. * * * In fact, comprehensively surveying all the contentions relied upon, aside from the erroneous construction of the Amendment which we

have previously disposed of, we cannot escape the conclusion that they all rest upon the mistaken theory that although there be differences between the subjects taxed, to differently tax them transcends the limit of taxation and amounts to a want of due process, and that where a tax levied is believed by one who resists its enforcement to be wanting in wisdom and to operate injustice, from that fact in the nature of things there arises a want of due process of law and a resulting authority in the judiciary to exceed its powers and correct what is assumed to be mistaken or unwise exertions by the legislative authority of its lawful powers, even although there be no semblance of warrant in the Constitution for so doing."

In Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 69, 41 L. Ed. 369, the Supreme Court was dealing with the antithesis of the question presented here. It is there contended that it was a violation of the Federal Constitution to fix a tax for the benefit supposed to accrue from the establishment of an irrigation district upon an ad valorem basis. The statements made by the Supreme Court with reference to that question are illuminating upon the matter now under consideration. It is said in the opinion of the court: "Although there is a marked distinction between an assessment for a local improvement and the levy of a general tax, yet the former is still the exercise of the same power as the latter, both having their source in the sovereign power of taxation. Whatever objections may be urged to this kind of an assessment, as being in violation of the state constitution, yet, as the state court has held them to be without force, we follow its judgment in that case, and our attention must be directed to the question whether any violation of the federal constitution is shown in such an assessment. Can an ad valorem assessment on the land benefited, or, in other words, can such an assessment as is provided for in sections 18, 20, 21, and 22 of the act, be legally levied in such a case as this? Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought, in justice, to be assessed for a greater sum than the benefits received by it; yet it is plain that the face of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some

means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and, where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an ad valorem method of assessing the lands is to be held a violation of the federal constitution? It seems to us clearly not. It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem, and far from a case of taking property without due process of law."

In McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 778, 49 L. Ed. 78, 1 Ann. Cas. 561, it was contended that an act of Congress taxing oleomargarine ten cents a pound constituted a violation of the due process of the Fifth Amendment because obviously intended to favor the manufacturers of butter at the expense of the manufacturers of oleomargarine. Dealing with that subject, the court stated as follows:

"3. Whilst undoubtedly both the 5th and 10th Amendments qualify, in so far as they are applicable, all the provisions of the Constitution, nothing in those amendments operates to take away the grant of power to tax conferred by the Constitution upon Congress. The contention on this subject rests upon the theory that the purpose and motive of Congress in exercising its undoubted powers may be inquired into by the courts, and the proposition is therefore disposed of by what has been said on that subject.

"The right of Congress to tax within its delegated power being unrestrained, except as limited by the Constitution, it was within the authority conferred on Congress to select the objects upon which an excise should be laid. It therefore follows that, in exerting its power, no want of due process of law could possibly result, because that body chose to impose an excise on artificially colored oleomargarine, and not upon natural butter artificially colored. The judicial power may not usurp the functions of the legislative in order to control that branch

of the government in the performance of its lawful duties. This was aptly pointed out in the extract heretofore made from the opinion in Treat v. White, 181 U. S. 264, 21 S. Ct. 611, 45 L. Ed. 853.

"But it is urged that artificially colored oleomargarine and artificially colored natural butter are in substance and in effect one and the same thing, and from this it is deduced that to lay an excise tax only on oleomargarine artificially colored, and not on butter so colored, is violative of the due process clause of the 5th Amendment, because, as there is no possible distinction between the two, the act of Congress was a mere arbitrary imposition of an excise on the one article, and not on the other, although essentially of the same class. Conceding, merely for the sake of argument, that the due process clause of the 5th Amendment would avoid an exertion of the taxing power which, without any basis for classification, arbitrarily taxed one article and excluded an article of the same class, such concession would be wholly inapposite to the case in hand."

In Hylton v. United States, 3 Dall. (3 U. S.) 171, 1 L. Ed. 556, the Supreme Court had under consideration an act of Congress (1 U. S. Stat. 373) fixing duties upon carriages for the conveyance of persons. The validity of the statute was upheld, although the question under consideration was whether or not the statute violated the constitutional provision against the imposition of direct taxes by Congress (article 1, §§ 2, 8, 9).

■ We have quoted somewhat extensively from the decisions of the Supreme Court of the United States dealing with the subject of taxation as affected by the Fifth Amendment to the Constitution of the United States for the purpose of making it manifest that the tax imposed by the Legislature of the Territory of Hawaii upon automobiles in no wise violates the provisions of the Fifth Amendment, although we think that the decision of the Supreme Court in Toyota v. Hawaii, 226 U. S. 184, 33 S. Ct. 47, 57 L. Ed. 180, supra, so definitely settles the question as to render unnecessary any extended discussion of the subject.

■ It is stated in the briefs that it has never been judicially determined whether or not the Fourteenth Amendment to the Constitution of the United States limiting the powers of a state applied to the Territory of Hawaii. We mention this merely for the purpose of indicating that we do not consider that question a material one in the case at bar. When Congress gave full legislative authority to the state Legislature of the Territory of Hawaii to legislate upon "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable" (see 48 USCA § 562), it vested in the Legislature of Hawaii the full taxing power which had theretofore existed in Congress over that Territory, and the legislation enacted by the territorial Legislature under this delegated power can only be held violative of the Constitution of the United States when palpably arbitrary. Toyota v. Hawaii, 226 U. S. 184, 33 S. Ct. 47, 57 L. Ed. 180, supra.

The statute attacked is not void.

Judgments affirmed.