**NOTEMAN et al. v. WELCH, Former Collector of Internal Revenue (three cases).**
**Law Nos. 7186, 7195, 7196.**

District Court, D. Massachusetts.
Jan. 16, 1939.

438

Hale & Dorr and Lawrence E. Green, all of Boston, Mass., for plaintiffs.

John A. Canavan, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., and George H. Zeutzius, Sp. Asst. to Atty. Gen., for defendant.

FORD, District Judge.

The plaintiffs in the above named three actions which have been consolidated for trial, the facts, except for the amounts involved, being similar in each case, seek to recover the sums of $3,579.07, $13,-381.65, and $8,528.60, respectively, with interest from October 4, 1937, representing the corporate surtaxes, penalties, and interest assessed against and collected from them as trustees of the National Loan Society of Malden, the National Loan Society of Boston, and the National Loan Society of Cambridge, hereinafter called the taxpayers, upon the undistributed adjusted net incomes of the latter for their respective fiscal years ending September 30, 1935.

These Societies are associations organized under declarations of trust in accordance with the laws of the Commonwealth of Massachusetts, and under the provisions of 26 U.S.C. § 1696, 26 U.S.C.A. § 1696, are corporations for tax purposes.

The taxes, interest, and penalties were assessed and collected from the plaintiffs as a result of a determination of the Commissioner of Internal Revenue that the above named associations were personal holding companies and subject to surtax under the provisions of Section 351 of the Revenue Act of 1934, 48 Stat. 751, 26 U.S.C.A. § 331.

Section 351 reads as follows:

"Title IA—Additional Income Taxes

"Sec. 351. Surtax On Personal Holding Companies.

"(a) Imposition of Tax.—There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

"(1) 30 per centum of the amount thereof not in excess of $100,000; plus

"(2) 40 per centum of the amount thereof in excess of $100,000.

"(b) Definitions.—As used in this title—

"(1) The term 'personal holding company' means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits, and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

Statements of fact and conclusions of law appearing herein are intended to meet the requirements of Rule 52 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

On December 6, 1935, the taxpayers filed their corporate income tax returns on Form 1120 for the fiscal year ending September 30, 1935, reflecting tax liabilities which were paid. No returns were filed by the taxpayers on Form 1120–H prescribed to be filed under the conditions referred to in Treasury Regulations 86, Article 351–8.

On August 12, 1937, the Commissioner of Internal Revenue notified the taxpayers of deficiencies in surtax under Section 351 of the Revenue Act of 1934 and surtax penalties for failure to file a personal holding company return (Form 1120 –H). The taxpayer filed a waiver of restrictions on the assessment and collection

of the deficiencies, assenting to their immediate assessment and collection. On September 7, 1937, the Commissioner prepared returns on Form 1120–H in accordance with the proposed deficiencies. On September 17, 1937, the surtax deficiencies, interest, and penalties were assessed and paid by the taxpayers. A claim for refund was filed on October 6, 1937, on these grounds: (1) That the taxpayers were not subject to the provisions of Section 351 of the Revenue Act of 1934 for the fiscal years in question and that no taxes were due upon their undistributed adjusted net incomes; (2) that Section 351 cannot be constitutionally applied (under the provisions of the Fifth Amendment, Const.U.S.C.A.) to impose the surtax set forth therein upon the taxpayers; and (3) that whether the Commissioner was correct or not in determining the deficiencies and imposing the surtaxes, the penalties were imposed without authority of law. These claims were rejected and the suits are properly before this Court.

It was stipulated between the parties that during the tax years in question more than 50 per cent in value of the outstanding stock of the plaintiff companies was owned directly or indirectly by and for not more than five individuals, and the only remaining question left for decision on this phase of the case is whether at least 80 per cent of the gross income of the taxpayers for the tax years in question was derived from "interest" as used in Section 351, supra.

The gross and only income of the taxpayers for the tax years in question was derived from payments received on loans made by the taxpayers and is reflected in item 7 of their tax returns opposite the designation "Interest on loans, notes, etc.," where all the words following the word "interest" are stricken out and the words "and charges for Small Industrial Loans" substituted, so as to read: "Interest and charges for Small Industrial Loans."

It is argued by the taxpayers that their income—what they received for the use of the money loaned—was a composite of and several into (1) interest; and (2) charges or expenses of making, servicing, and collecting the loans, and the latter consisted of such a proportion of the whole that far less than 80 per cent of their income was derived from "interest" as used in Section 351 and consequently they were not subject to the taxes in question.

This brings us to the question as to what is the meaning of the word "interest" as used in Section 351.

These associations did business under the provisions of Chapter 140, Massachusetts General Laws (Ter.Ed.), commonly known as the "Small Loans Act," Section 96, which reads as follows:

"Business of making small loans defined and regulated. No person shall directly or indirectly engage in the business of making loans of three hundred dollars or less, if the amount to be paid on any such loan for interest and expenses exceeds in the aggregate an amount equivalent to twelve per cent per annum upon the sum loaned, without first obtaining * * * a license * * *."

Section 100 of this Act reads as follows:

"Rate of interest. He [Commissioner of Banks] shall establish the rate of interest to be collected, and in fixing said rate shall have due regard to the amount of the loan, and the nature of the security, and the time for which the loan is made; but the total amount to be paid on any loan for interest and expenses shall not in the aggregate exceed an amount equivalent to three per cent a month on the amount actually received by the borrower, computed on unpaid balances; and no licensee or company or association to which sections ninety-six to one hundred and twelve, inclusive, apply shall charge or receive upon any loan a greater rate of interest than that fixed by the Commissioner. No charge, bonus, fee, expense or demand of any nature whatsoever, except as above provided, shall be made upon loans to which said sections relate."

The plaintiffs contend that the word "interest" as used in the Massachusetts statute to designate the amount licensed loan agencies may charge, is a much more comprehensive term than as defined in Treasury Regulations 86 (infra). They argue the term "interest" as used in that statute designating what they may charge for the use of money means (1) "pure interest," and (2) "charges for making, servicing, and collecting loans," which latter may be divided into seven classifications, viz.: (1) investigation of borrower and security; (2) closing of loans, papers, etc.; (3) servicing and collecting loans; (4) license and reports to State Banking Department and Public Relations; (5) ad-

vertising to secure loans; (6) bad debts; and (7) general expenses.

Through expert testimony and other witnesses they maintained the percentage of the income received to be allocated to six of these specifications (excluding general expenses referred to in Item 7, consisting chiefly of salaries, taxes, one-third of the management fees, legal fees and disbursements, and small miscellaneous expenses), would amount to about 42.8 per cent of their gross income and if deducted less than 80% of the income of the taxpayers was derived from "interest" as used in Section 351.

It was stated in the case of Cuneo v. Bornstein, 269 Mass. 232, 236, 168 N.E. 810, that the purpose of the "Small Loans Act" was to prohibit the unlicensed business, of making small loans and to prevent an excessive rate of interest on such loans and that the statute was passed as a protection to the borrower. The Court in this case speaks of the total amount to be charged borrowers as the "rate of interest" on the loans.

Section 100 of Chapter 140 of the Massachusetts General Laws (Ter.Ed.) in authorizing the Commissioner of Banks to fix the rate of interest on loans, says he "shall have due regard to the amount of the loan, and the nature of the security, and the time for which the loan is made." The evidence of the taxpayers showed that the Commissioner in fixing the rate of interest in accordance with this Section took into account the expense of advertising and auditing, bad debts, depreciation of furniture, fixtures and equipment, insurance, fidelity, bonds, legal fees and disbursements, postage and express, printing, stationery and supplies, rent, salaries, supervision and administration, telephone and telegraph charges, traveling expenses, i. e., the whole operating expense.

In addition to the designation by the Supreme Court of Massachusetts of the amount to be charged (Cuneo v. Bornstein, supra), this amount authorized to be charged is spoken of in the Rules and Regulations promulgated by the Commissioner of Banks in varying terms as "balance due on principal and interest," "rate of interest," "the interest rate," "interest," and "expenses and interest."

But, however it may be termed, it is a single charge for the use of borrowed money and is, as the Massachusetts Supreme Court and the title of Section 100, Chapter 140 of the Massachusetts General Laws (Ter.Ed.) say it is, "the rate of interest" and whatever factors compose the whole I do not find any authority or warrant in the Massachusetts statute for concluding that the rate of interest fixed for the use of the money borrowed can be broken up into what the taxpayers call "real interest" and "charges for making, servicing, and collecting" the loans in order that the latter may be deducted from it.

The United States Circuit Court of Appeals for the District of Columbia in the case of Reagan v. District of Columbia, 41 App.D.C. 409, 413, in construing a small loans act passed by Congress practically similar to the small loans act of the Commonwealth of Massachusetts, regarded the term "interest" as used in the statute a composite term which included "all fees, expenses, demands, and services of every character, including notarial and recording fees and charges, except upon foreclosure of security," and used the words "interest" and "charge" interchangeably.

The legislatures in their wisdom knew the only way they could adequately protect the borrower which was the purpose of these enactments was to establish a fixed interest rate. This was the amount allowed by law for the use of the money and as stated in the case of Hayes et al. v. Commissioner of Corporations and Taxation, 261 Mass. 134, 136, 158 N.E. 539, 540: "The word 'interest' in its usual sense is the compensation fixed by the parties or allowed by law for the use of money or as damages for its detention." And as stated in Cochran v. City of Boston, 211 Mass. 171, 173, 97 N.E. 1100, 1101, 39 L.R.A.,N.S., 120, Ann.Cas.1913B, 206: "Interest is compensation for the use of money which is due."

In the case of Sayles v. Commissioner of Corporations and Taxation, 286 Mass. 102, 189 N.E. 579, 91 A.L.R. 1267, the Court in considering the amount of a tax due on income from bonds containing a tax refund provision in addition to a stipulated interest, said that both made up the total income from the bonds; the two elements were not severable in source or purpose; that from the time the bond was issued the refund provision was not a collateral undertaking independent of the debt or of the agreement to pay a stated percentage of the principal sum, but it

was an integral part of the corporation's promise to pay compensation for the use of the money; the whole was interest and taxable as such. The principle laid down in this case is plainly applicable to the instant case.

It is to be noted that Section 351, supra, contains no provision for any division of gross interest or deductions therefrom in determining gross income, and further the entire amount paid by the borrowers for the use of the money, reportable as gross interest in the taxpayers' corporate income tax returns (Title 1, Part 2, Sec. 22(a), Revenue Act of 1934, 26 U.S.C.A. § 22(a), was deductible from the gross income in the income tax returns of the borrowers (Sections 23(b), 351(b)(4) of the Revenue Act of 1934, 26 U.S.C.A. §§ 23 (b), 331(b)(4), as interest paid on indebtedness.

In Article 351–2 (3) of Treasury Regulations 86, the term "interest" as employed in Section 351 of the Revenue Act of 1934, is defined as follows: "Interest. The term 'interest' means any amounts received for the use of borrowed money which are includible in gross income under Title I."

Section 119 of the Revenue Act of 1934, 26 U.S.C.A. § 119, in referring to gross income from interest provides:

"(a) Gross income from sources in United States. The following items of gross income shall be treated as income from sources within the United States:

"(1) Interest. Interest from the United States, any Territory, any political subdivision of a Territory, or the District of Columbia, and interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—"

▮ In view of all this it appears to me that the taxpayers' contention that the gross income received by them on the loans was severable into true interest and charges for making and servicing the collection of loans is untenable; that the term "interest" as used in Section 351 was intended to include the gross amounts received from the borrower for the use of the money loaned.

The cases of Lassman v. Jacobson, 125 Minn. 218, 146 N.W. 350, 51 L.R.A.,N.S., 465, Ann.Cas.1915C, 774 and In re Mansfield Steel Corporation, D.C., 30 F.2d 832, and like cases are usury cases and in no way authority for a contrary conclusion.

The taxpayers next argue that it was not the intention of Congress to include Small Loan Companies within the provisions of Section 351.

This Section appeared for the first time in the Revenue Act of 1934. It was re-enacted in Section 351 of the Revenue Act of 1936, 26 U.S.C.A. § 331, with some modifications which do not concern us in this case. In the Revenue Act of 1934, the only corporations exempt from the tax imposed by the provisions of Section 351 were (1) corporations exempt from taxation under Section 101 of Title 1, 26 U.S.C. A. § 103; (2) banks and trust companies (incorporated under the laws of the United States, or of any State or Territory, a substantial part of whose business is the receipt of deposits); (3) life insurance companies; and (4) surety companies. And in the Revenue Act of 1938, Section 351, now Sections 401–406 of that Act, 26 U.S.C.A. §§ 331–336, was further amended to exclude from its provisions in addition to those already exempt, "a foreign personal holding company * * * or a licensed personal finance company, under State supervision, at least 80 per centum of the gross income of which is lawful interest."

The legislative history of these enactments shows that in 1934 the Ways and Means Committee of the House of Representatives (H.R.Rep. No. 704, 73rd Congress, 2nd Session, p. 12) defines personal holding companies intended to be included as "any corporation 80 per cent of whose gross income for the taxable year is derived from rents, royalties, dividends, interest * * *." The words of the section were in plain, direct, and understandable language and consideration was given to excluding organizations from its operation it was not the intention of Congress to include. It is safe to assume that all companies the plain terms of the section included, and did not expressly exempt, were subject to its provisions. In 1935 before the Senate Committee on Finance in connection with the Revenue Act of 1935, 49 Stat. 1014, it was proposed to eliminate personal finance companies from the operation of the Section and this was refused.

▮ In 1936 the House of Representatives omitted Section 351 from the Revenue Act of 1936, but the Section was restored by the Senate and enacted with modifications as to the rate of taxes (Senate Com-

mittee on Finance Rep. No. 2156, 74th Congress, 2nd Session). In 1938 Congress finally excluded personal finance companies from the operation of Section 351 (Revenue Act of 1938, Section 402, 26 U.S.C.A. § 332). All this time Congress had knowledge of Treasury Regulations 86 defining the term "interest" under Section 351 of the Revenue Act of 1934; in fact during this period Congress was being importuned to exempt personal finance corporations from the provisions of Section 351. And as stated in the case of Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 117, 74 L.Ed. 457: "The substantial re-enactment in later acts of the provision theretofore construed by the Department is persuasive evidence of legislative approval of the regulation." Hassett v. Welch, 303 U.S. 303, 312, 58 S.Ct. 559, 82 L.Ed. 858; Hartley, Ex'r, v. Commissioner of Internal Revenue, 295 U.S. 216, 220, 55 S.Ct. 756, 79 L.Ed. 1399; Murphy Oil Co. v. Burnet, 287 U.S. 299, 307, 53 S.Ct. 161, 77 L.Ed. 318; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 75 L.Ed. 1183.

■ Finally in this connection I find that the associations represented by the taxpayers were personal holding companies within the letter and spirit of Section 351 and there was no intention expressed by Congress at any time to exclude them from either or both. Treat v. White, 181 U.S. 264, 267, 268, 21 S.Ct. 611, 45 L.Ed. 853.

■ The legislative history seems to be convincing that Congress intended to include companies such as the associations represented by these taxpayers within the provisions of Section 351. The mere fact that Congress later exempted small loans companies from the operation of this Section in question, does not in any way support the contention of the taxpayers that Congress did not intend initially to include organizations of this type within the provisions of this Section. If the legislative history proves anything in this case, it supports the opposite theory.

■ The taxpayers contend further they were not required to file separate returns on Form 1120–H and should recover the penalties for failure to file such returns with interest, whether or not they are held subject to the tax imposed by Section 351.

Section 351(c) provides: "Administrative provisions. All provisions of law (including penalties) applicable in respect of the taxes imposed by Title I of this Act [Subchapters A–C of this chapter], shall insofar as not inconsistent with this section, be applicable in respect of the tax imposed by this section, * * * ."

Section 62 of the Revenue Act of 1934, 26 U.S.C.A. § 62, provides that: "The Commissioner, with the approval of the Secretary, shall prescribe and publish all needful rules and regulations for the enforcement of this title [chapter]."

Article 351–8 of Treasury Regulations 86 provides that a separate return is required for the surtax imposed under Section 351, supra, and that such return shall be made on Form 1120–H.

Section 54(a) of the Revenue Act of 1934, 26 U.S.C.A. § 54(a), provides that: "By taxpayer. Every person liable to any tax imposed by this title [chapter] or for the collection thereof shall * * * comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe."

And Section 406 of the Revenue Act of 1935, 26 U.S.C.A. § 1525, provides: "In the case of a failure to make and file an internal-revenue tax return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after the date of the enactment of this Act [August 30, 1935], if a 25 per centum addition to the tax is prescribed by existing law, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate."

No returns as required by the Regulations were filed on Form 1120–H by the taxpayers, and the penalties in question were imposed and I know of no legal impediment to their imposition.

Finally the taxpayers contend that Section 351 contravenes the Fifth Amendment in that the legislation is arbitrary and capricious, because it exempts from its provisions banks and trust companies which they assert are engaged in making small loans similar to the plaintiffs.

Congress in reporting the proposed legislation in 1934 stated "that the majority of these corporations are in fact formed

for the sole purpose of avoiding the imposition of the surtax on the stockholders."

The Court in Helvering v. National Grocery Company, 304 U.S. 282, 286, 58 S. Ct. 932, 82 L.Ed. 1346, in upholding the constitutionality of Section 104 of the Revenue Act of 1928, 26 U.S.C.A. § 104 which relates to the accumulation of surplus to evade surtax upon the shareholders of a corporation approved the Court's language in the case of United Business Corporation v. Commissioner of Internal Revenue, 2 Cir., 62 F.2d 754, 756, wherein it is stated that: "Congress in raising revenue has incidental power to defeat obstructions to that incidence of taxes which it chooses to impose." A. D. Saenger, Inc., v. Commissioner of Internal Revenue, 5 Cir., 84 F.2d 23, 24. Legislation involved in the present case is of similar type to that involved in the National Grocery Company case, supra.

■■ The contention that the exemption of banks and trust companies from the provisions of Section 351 is arbitrary, capricious, and unreasonably discriminatory is without substance. It is well recognized that a legislature has authority to select some and omit other subjects for taxation. Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Billings v. United States, 232 U.S. 261, 268, 34 S.Ct. 421, 58 L.Ed. 596; Brushaber v. Union Pacific Railroad Company, 240 U.S. 1, 23, 24, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713.

It is stated in Barclay & Co. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. 348, 349, 69 L.Ed. 703: "The power of Congress in levying taxes is very wide and where a classification is made of taxpayers that is reasonable, and not merely arbitrary and capricious, the Fifth Amendment cannot apply." The Supreme Court said in Evans v. Gore, 253 U.S. 245, 256, 40 S.Ct. 550, 554, 64 L.Ed. 887, 11 A.L.R. 519: "It may be applied to every object within its range 'in such measure as Congress may determine'; enables that body 'to select one calling and omit another, to tax one class of property and to forbear to tax another'; and may be applied in different ways to different objects so long as there is 'geographical uniformity' in the duties, imposts, and excises imposed."

The difference between banking institutions and other types of corporations is perfectly clear and well recognized. Congress might well have thought that no legislation in connection with these was necessary concerning the obstruction to taxation it sought to obliterate. There might have been recognized many differences in conditions and circumstances surrounding the activities of banking institutions as distinguished from other corporations. La Belle Iron Works v. United States, 256 U.S. 377, 392, 393, 41 S.Ct. 528, 65 L.Ed. 998.

I cannot find that reasonable grounds did not exist for exempting banks and trust companies from operation of Section 351 or that there was any arbitrary discrimination in contravention of the Fifth Amendment.

The plaintiffs' motions for judgment are denied. The defendant's motions for judgment are granted, with costs, in accordance with the above opinion.

The requests of the parties for findings of fact and conclusions of law, so far as they are consistent with the above, are granted, and, to the extent that they differ from the above findings and conclusions, they are denied.