*Decision will be entered under Rule 50.*

O. O. OWENS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14379, 31986, 47887. Promulgated October 8, 1932.

*Frederick Secord, Esq.,* for the petitioner.

*Byron M. Coon, Esq.,* and *William G. Cullen, Esq.,* for the respondent.

### MEMORANDUM OPINION.

BLACK: These cases involve deficiencies against petitioner O. O. Owens of $36,116.86 for 1920 in Docket No. 14379, $54,221.92 for 1923 in Docket No. 31986, and $1,203.58 for 1926 in Docket No. 47887. The proceedings were consolidated for hearing. No evidence was introduced to support the errors alleged in Dockets 14379 and 47887, and in their brief, counsel for petitioner abandoned them. Respondent's determination of deficiencies for 1920 and 1926 will accordingly be sustained.

In Docket No. 31986, petitioner alleges that respondent erred in holding that certain funds, amounting to $202,523.30, accumulated in the hands of a court receiver, mostly in prior years, for " unascertained persons " and paid over to petitioner in the taxable year, were taxable to petitioner in the year when paid over to him. Petitioner also alleges that in case said income is held taxable to petitioner, respondent erred in his allowance for depletion with respect thereto, and that this error also extended to certain other income of petitioner from the same oil wells, which was received after the receivership had ended and covered the period from April 16, 1923, to December 31, 1923.

The facts were all stipulated and the stipulation is incorporated herein by reference. We will quote certain parts therefrom which we think are pertinent in our discussion which follows. We will discuss the two issues in their order.

### *Income Accumulated for Unascertained Persons.*

In order that we may have before us the exact circumstances under which the receivers were operating the property and accumulating the income involved in the equity suit above referred to, we quote pertinent paragraphs from the stipulation of facts, as follows:

(f) On April 17, 1914, in order to conserve this valuable property for the Creek Nation, or the then unknown heirs of Barney Thlocco, the court on motion of the United States of America appointed J. F. Darby, Receiver for the property and directed him to lease the land for the term of the Receivership for oil and gas purposes upon a royalty of twenty-five per cent (25%) of the gross revenue and income, to be held for the benefit of whoever might ultimately be determined to be the rightful owner of the property. In pursuance of said authority, the said Receiver on April 30, 1914, gave the

Black Panther Oil & Gas Company an oil and gas lease to remain in force until the final termination of the said suit, the lessee agreeing to pay a royalty of twenty-five per cent (25%).

(g) Between November 1, 1913, and May 3, 1915, approximately two hundred twenty-five (225) Indians and other claimants entered their appearances in the aforesaid suit and filed intervening petitions and other pleadings, each asserting that he was the heir of Barney Thlocco, or the assignee or vendee of an heir.

(h) On May 3, 1915, an order was entered by the said Court granting leave to the defendants, Bessie Wildcat, et al, to withdraw their separate answers and file one answer, in order that the court might first determine whether the allotment should be cancelled as prayed by the United States of America, and if not, to determine thereafter which of the various defendants and interveners was the legal heir or heirs of Barney Thlocco and which was entitled to the said property.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(n) On February 11, 1918, the mandate of the Supreme Court of the United States was entered of record in the said District Court, thus eliminating from the controversy the claims of the United States of America and resolving it into a determination of who was the heir of Barney Thlocco and as such entitled to the allotment, and the impounded fund derived therefrom.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(ee) On May 29, 1923, the said District Court, all interventions having been disposed of, rendered a final decree, ordering the distribution of the impounded fund. In this decree the Court ordered the Receivers to pay to O. O. Owens, the petitioner herein, the sum of $202,523.30.

In order clearly to understand the difference between the law applicable to receivers for individuals, receivers for corporations and receivers for " unascertained persons," it will be necessary to review shortly the history of the various revenue acts in so far as their provisions pertain to this question.

The Act of 1913 (Sec. II, par. D) provides that " guardians, trustees, executors, administrators, agents, receivers, conservators and all persons, corporations or associations acting in any fiduciary capacity, shall make and render a return of the net income of the person for whom they act, subject to this tax, coming into their custody or control and management, and be subject to all of the provisions of this section which apply to individuals." The Act of 1913 did not contain any provisions relating to receivers or other fiduciaries acting for corporations. The case of *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602, determined that the Act of 1913 did not tax the income of " unborn or unascertained persons " and that the fiduciary for such persons was not liable for any tax upon their income.

The Act of 1916 corrected the omissions in the Act of 1913 with respect to fiduciaries for corporations and for " unborn and unascertained persons." It provided, in section 13, paragraph (c), that

receivers, trustees, etc., or corporations shall make returns and pay the tax of such corporations. This is the particular provision of the Act of 1916 which is involved in *North American Oil Consolidated v. Burnet*, 286 U. S. 417, which will be referred to more at length hereinafter.

The Act of 1916 provided, in section 2, paragraph (b), that income accumulated in trust for the benefit of "unborn or unascertained persons" shall be subject to the tax and the tax shall be assessed to the fiduciary. That this latter paragraph taxed the fiduciary and not the "unborn and unascertained persons" is clear from the language of the act, but is made certain by the decision of the Supreme Court in the *Smietanka* case, where the court said: "The Act of September 8, 1916, specifically declared that the income accumulated in trust for the benefit of 'unborn and unascertained persons' should be taxed and assessed to the trustee."

The pertinent provisions of the Acts of 1918 and 1921 are the same. These acts provided, in paragraphs (a), (b) and (c) of section 219, that the tax shall apply to income accumulated in trust for the benefit of "unborn or unascertained persons," and that the fiduciary (which includes receivers by the definition set forth in section 200) shall make the return and pay the tax. Section 225 of these acts provides that every fiduciary (except receivers appointed by authority of law in possession of part only of the property of an individual) shall make a return for the individual estate or trust for which he acts. These acts also provide in section 239 that receivers, trustees, etc., of corporations shall make the return and pay the tax of such corporations.

The significance of this history in the distinguishing of the *North American Oil Consolidated* case, *supra*, from the instant case, lies in the distinction made in these acts between receivers for individuals, receivers for corporations, and receivers for "unborn or unascertained persons." In the case of receivers for individuals and receivers for corporations, there is of course an existing individual taxpayer or corporation taxpayer who, under the law, may be subject to the tax. The question may arise, as it did in *North American Oil Consolidated v. Burnet*, *supra*, whether the receiver or the taxpayer should make the return and pay the tax. This involves the question of whether the receiver or the taxpayer is assessed under the provisions of the law. No such question can arise in the case of a receiver for "unborn or unascertained persons." Such persons are not persons or individuals within the meaning of the revenue acts; they are not assessed and they are not taxpayers. The Supreme Court held in *Smietanka* v. *First Trust & Savings Bank*, *supra*, that, notwithstanding the expressed intention set forth in the Act of 1913 to tax citizens everywhere, including all persons natural and corporate,

such "unborn or unascertained persons" were not taxed nor was their income taxed by that law. In none of the subsequent acts have "unborn or unascertained persons" been taxed or included by definition as individuals subject to the tax. When Congress cured the omission in the Act of 1913 it did not tax "unborn or unascertained persons" as individuals, but, instead, taxed such of their income as was being accumulated for their benefit by assessing their fiduciaries. All of the acts since the Act of 1913 levy the tax, we think, upon the fiduciary of the "unborn or unascertained persons" and do not treat such persons as individuals subject to any tax or as individual taxpayers.

For this reason we think the receivers in Equity Suit No. 2017, should have made annual return of the income which came into their hands after the effective date of the Revenue Act of 1916 and should have paid taxes thereon. They were, as we have already pointed out, holding this property and income for the benefit of the Creek Nation or the unknown heirs of Barney Thlocco, whichever the court should decide, and after 1918 they were holding it solely for the unascertained heirs of Barney Thlocco or their assignees. Whether the receivers did make return of such income and pay taxes on it, we do not know, but we do not have that question before us. The question which we have to decide is whether this $202,523.30, accumulated by the receivers over a term of years, was taxable to the petitioner in the year when received by him.

We think the facts in the instant case are distinguishable from those in *North American Oil Consolidated, supra,* and *Trojan Oil Co.,* 26 B. T. A. 659. The facts stated by the Circuit Court of Appeals in *Commissioner* v. *North American Oil Consolidated,* 50 Fed. (2d) 752, were as follows:

The Government contended that, as the land had been withdrawn from location by an order of President Taft, the respondent was not entitled to a patent. An action was brought to terminate the respondent's right, and in that action the receiver was appointed. The respondent was a large operating company holding many pieces of property, and this litigation affected only the property in section 2. * * * The petitioner (the Commissioner) contends that section 13, subdivision (c), of the Revenue Act of 1916, does not apply for the reason that it is inapplicable to a receiver holding only a part of the property of the taxpayer corporation.

The Supreme Court states the pertinent facts in *North American Oil Consolidated,* 286 U. S. 417, as follows:

The money was paid to the company under the following circumstances; Among many properties operated by it in 1916 was a section of oil land, the legal title to which stood in the name of the United States. Prior to that year, the Government, claiming also the beneficial ownership, had instituted a suit to oust the company from possession; and on February 2, 1916, it secured the appointment of a receiver to operate the property, or supervise its operations,

and to hold the net income thereof. * * * The income of 1916 and impounded by the receiver in that year was not taxable to him, because he was the receiver of only a part of the properties operated by the company.

The facts in *Trojan Oil Co.*, *supra*, are substantially the same as the facts in *North American Oil Consolidated* v. *Burnet*, *supra*, except in the former the income was accumulated over a period of several years, while in the latter the income in question related to only one year. The decision in both cases rested primarily on that part of the applicable revenue act and the Commissioner's regulations thereunder, which require receivers to make returns for corporations only in cases where they are in entire charge of the property of the taxpayer corporation. But where the receiver is not in entire charge of the property of such corporation, he is neither permitted nor required to make a return. That is not the question which we have before us to decide. As we have already endeavored to point out, the situation which we have before us is one where the receivers, during the years involved, were conserving the property and the income pending the ascertainment of who were the heirs of one Barney Thlocco, there appearing to have been at one time 225 claiming to be such, who were before the court. In such a case the income is being accumulated for "unascertained persons" and is governed by entirely different provisions of the statute from those which governed the decision of the Supreme Court in *North American Oil Consolidated*, *supra*, and which governed our decision in *Trojan Oil Co.*, *supra*. As we have already stated, it was the duty of the receiver in Equity Suit No. 2017 to have filed annual income-tax returns as a fiduciary, showing the income which had come into his hands and to have paid taxes on it. And this being done, the money would not be taxable to the "unascertained persons" for whom it was being accumulated, when such persons were finally ascertained by the court and the money paid over to them. On somewhat the same point, in the case of *Elnora C. Haag*, 19 B. T. A. 982–990, we said:

* * * The scheme of taxing income under the revenue acts does not contemplate that income of an estate be taxable both to the estate and to the beneficiary in the same year. Furthermore, we think that it was not intended to tax such income to the estate in one year and to the beneficiary in another. The Commissioner .has so interpreted the law in Regulations 65, article 344. We are therefore of the opinion that when income received by an estate is properly included in the gross income of the estate under the provisions of the Revenue Act and is not permitted to be deducted from the gross income of the estate and charged to the beneficiary for income-tax purposes under the provisions of the Revenue Act, such income may never be included in the gross income of the beneficiary.

For the reasons stated, we hold for petitioner on this issue and reverse the action of the Commissioner in including the $202,523.30 in question in petitioner's income for 1923.

*Depletion Base.*

We next take up petitioner's assignment of error which disputes the correctness of the base which the Commissioner used in figuring depletion on petitioner's share of oil and gas produced on the Barney Thlocco allotment from April 16, 1923, to December 31, 1923. The Commissioner fixed petitioner's total cost upon which depletion should be based at $57,666.67.

The petitioner, together with Brazell and Johnson, acquired the fee estate of Martha Jackson and the estate by the curtesy of Saber Jackson. The petitioner expended in the purchase of the two estates the sum above mentioned. He does not dispute that this $57,666.67 represents his entire cash cost. In the purchase of the Martha Jackson interest, in addition to the cash paid, it was agreed that she might have a sum equal to 25 per cent of the impounded funds and the purchasers agreed to bear the expense of litigation to establish Martha Jackson as the lawful heir of Barney Thlocco. In order to better comply with this agreement, they assigned their interests in the Saber Jackson estate to the Black Panther Oil & Gas Company, the latter agreeing to bear the expense of litigation. The petitioner claims that his part of the value of the Saber Jackson interests, when he conveyed it, plus the value of a lease granted to the Black Panther Oil & Gas Company, was $185,000, and claimed that this $185,000 should be added to the cost of $57,666.67, as fixed by the Commissioner, and asked depletion on that basis. We do not agree with this contention. The petitioner gave up a right to one-half of his future expected profits in exchange for a service and it is not correct to state that such service is part of the petitioner's cost. The transaction resulted in a lessening of the future expected profits, but does not result in additional cost.

Petitioner has shown no expenditures or investment costs beyond the amounts allowed by the respondent. The mere increase in value of the property after petitioner acquired it does not add to the cost for depletion purposes. Depletion is based on cost and not value, except in certain cases where depletion on a discovery basis is allowed. Its object is to return to the taxpayer his original investment, and when that is accomplished no further deduction is allowable. *United States* v. *Ludey*, 274 U. S. 295.

Respondent's action in fixing the base for depletion at $57,666.67 is approved.

Reviewed by the BOARD.

*In Docket Nos. 14379 and 47887 decision will be entered for the respondent. In Docket No. 31986 decision will be entered under Rule 50.*