R. S. Goforth and Mary B. Goforth, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 52316. Promulgated August 13, 1935.

*Charles H. Garnett, Esq.*, for the petitioners.
*Willis R. Lansford, Esq.*, for the respondent.

OPINION.

TRAMMELL: The principal issue in this proceeding relates to the proper method of computing the profit derived by petitioners in 1928 from the sale to Morrison of an undivided 30-acre interest in the mineral rights in their land. Petitioners contend that the taxable gain derived by them was $24,399. By a radically different

method of computation respondent has determined the profit at $48,192.37.

Respondent approved the revenue agent's report in which the profit was computed by assuming that, upon settlement on January 30, 1928, of the litigation involving title to the lands, petitioners thereby *acquired* title to 45 acres having a royalty value of $90,000. The impounded oil attributable to the 45 acres was $53,517.45. The cost of acquiring title, comprising $45,000 paid to the Indian heirs, plus the litigation costs, in the total amount of $58,681.50, was allocated as follows: To the royalty from 45 acres, $36,799.25, and to the impounded oil, $21,882.25. On the basis of the proportion allocable to 30 acres, respondent determined a profit on the sale of the royalty interest to Morrison in the amount of $27,735.25, and a profit on the impounded oil of $20,457.12, making an aggregate gain on the Morrison sale of $48,192.37.

In his brief respondent concedes that the report of the revenue agent is erroneous to the extent it allots the cost and sale price between the fee and oil interest, on the ground that there is no evidence that petitioners paid anything for the oil rights sold Morrison, and seeks approval of his computation because the petitioners " have not presented to the Board any more correct method than used in the sixty-day letter." We can not agree with respondent's proposition.

The basic error lies in respondent's determination that petitioners *acquired* the mineral rights in 45 acres *in 1928* at a cost in the amount paid to settle the litigation. Since the court held petitioners had a good title to 60 acres before settlement of the litigation, it follows that the mineral rights were acquired by them in 1912 as part of the fee title. The amount paid to settle the litigation is merely additional cost of the title, and by the stipulation is applicable only to the mineral rights.

The petitioners did not sell to Morrison an interest in the fee for $60,000, and in addition the impounded royalty at the face value of the fund. What petitioner sold to Morrison was an undivided interest in the mineral rights, which constituted part of the fee title to the land, as of the date of the contract and deed, namely, December 11, 1926, with the right in Morrison specifically granted to receive his proportionate part of the royalties accruing from oil produced from the land subsequent to December 11, 1926, in the event the sale was finally consummated. The sale was finally consummated in 1928 and Morrison thereupon became entitled to and did receive a deed to a 30-acre undivided interest in the mineral rights in the land, together with his share of the impounded royalties, for all of which he paid to the petitioners $60,000.

By the judgment of July 10, 1927, the District Court of Seminole County held that the petitioner, Mary B. Goforth, owned an undivided one-half or 60-acre fee simple interest in the land. The effect of the dismissal on January 30, 1928, of the appeal then pending in the Supreme Court of Oklahoma was to cause the judgment of the district court to become final. The title thus confirmed in petitioners was acquired by them in 1912 at a cost of $3,000, which it is stipulated represented the agricultural value. The land had no mineral value prior to 1923. Thus, prior to January 30, 1928, the mineral rights in the land had cost the petitioners nothing. On that date they paid $58,681.50, to settle the litigation. This amount, being ascribable entirely to the mineral rights, represents the cost to the petitioner of the mineral rights in the 60 acres. However, six acres went to Pryor for attorney fees, which constitutes additional cost of title, leaving petitioners with a net 54-acre interest at a cost in the amount above stated. This gives a cost of $1,086.694 per acre, or a total cost basis to the petitioners of the 30-acre interest sold to Morrison in the amount of $32,600.82. Having received a total cash consideration of $60,000 from Morrison, the petitioners realized taxable profit of $27,399.18.

This conclusion is substantially in agreement with the petitioners' computation, except that they contend that the initial payment of $3,000 made by Morrison in 1926, since it became at that time their property unconditionally, constituted taxable income to them in that year and should not be included as part of the consideration in computing the profit realized in 1928. The argument we think is unsound. What the taxable status of the initial payment would have been if the sale to Morrison had not been consummated we need not consider here, for the reason that the sale was in fact fully consummated in 1928, and the $3,000 so paid clearly represents a part of the total consideration paid by Morrison for his 30-acre interest. The amount should, in our opinion, be included in computing the profit derived in 1928.

In this connection petitioners further assert that they are entitled at this time to elect to have the profit realized from the Morrison sale taxed as capital net gain, if it is to their advantage to do so, which can not be determined prior to our decision on the other issues herein. Respondent resists petitioners' contention on this point only on the ground that the 30-acre mineral interest sold Morrison was acquired by the petitioners as a result of the settlement of the litigation in 1928, and so did not constitute " property held by the taxpayer for more than two years ", as the term " capital assets " is defined in section 101 of the Revenue Act of 1928.

Respondent's position can not be sustained on the ground stated, but we have held in *Forest Anderson*, 30 B. T. A. 597, that amounts received as consideration for mineral deeds in Oklahoma constitute ordinary income and not capital gain. On authority of that decision, the contention of the petitioners is denied.

The remaining issue is whether the royalty from oil produced and impounded in 1927 and received by the petitioners in 1928 is taxable to them as a part of their gross income for that year, as contended by the respondent. The parties have stipulated, and we have so found, that the petitioners' lessee and the pipe line companies to which it sold oil from the lease declined to pay the disputed oil royalty to the petitioners or any other claimant, but, pending the outcome of the litigation over the fee title, impounded the proceeds thereof and held them in trust for the persons who should thereafter be ascertained to be their rightful owners. Subsequent to the settlement of the litigation on January 30, 1928, the impounded royalty was distributed to those persons ascertained to be the owners under the judgment of the court, and the petitioners received the sum of $29,848.12, which was impounded in 1927.

The Revenue Act of 1928, in section 161, provides among other things that income accumulated in trust for the benefit of unascertained persons shall be subject to the taxes imposed upon individuals, but that the tax shall be paid by the fiduciary. Section 701 of the same act defines the term "fiduciary" as including a trustee, and section 143 provides that every fiduciary, except a receiver appointed by authority of law, who is in possession of part only of the property of an individual, shall make a return under oath for any trust for which he acts.

In *O. O. Owens*, 26 B. T. A. 1147, we held that where income from royalties was impounded in the custody of a court receiver during litigation to determine the unknown heirs of the original owner, the receiver was a fiduciary and under the provisions of the Revenue Acts of 1916, 1918, and 1921, which are substantially the same as those contained in the Revenue Act of 1928, *supra*, the fiduciary should have filed returns and paid the income taxes thereon. We further held that, when the funds were released and paid to the beneficiary determined by the court to be entitled to receive them, they were not income taxable to the beneficiary in that year. In our opinion we reviewed at some length the history of the provisions of the revenue acts applicable to receivers and other fiduciaries for individuals, for corporations, and for "unascertained persons." We also reviewed and distinguished the facts in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, upon which respondent relies in the instant case.

The Circuit Court of Appeals, at —— Fed. (2d) —— (C. C. A., 10th Cir., July 3, 1935), affirmed our decision in the *Owens* case, so far as material here. In that case, the court held that the portion of the income accumulated in the hands of the receiver up to July 9, 1917, on which date Owens and Brazell acquired the interest of the heir of the original Indian allottee in the allotment, was received by them by virtue of their contract of purchase, and that they were taxable only to the extent the amount received by each exceeded the cost to him of the estates and interests acquired under the contracts of July 9, 1917. But the income accumulated by the receiver after that date, the court held, was " income accumulated in trust for the benefit of * * * unascertained persons ", and it held that it was the duty of the receiver to return such income for taxation and to pay the tax thereon to and including March 25, 1922, the date on which the persons entitled to receive the funds were finally determined by judicial decision.

In the *Owens* case, the land in question was allotted to Barney Thlocco, a Creek Indian, who died about the time the allotment was made, and after the discovery of oil and gas in 1913, the United States brought suit against persons claiming to be the heirs of Thlocco to cancel the allotment and recover the land for the benefit of the Creek Nation. In 1915 the court entered a decree against the United States, adjudging that the allotment was valid, which decree was affirmed by the Supreme Court of the United States in 1917. Thereafter, the only question left for determination was the heirship of Thlocco.

In the present case, the land in question was allotted to " Ida " a Seminole Indian, whose correct name was " Eddie." He died intestate and without issue in 1914. So far as the record discloses the validity of the allotment to Ida was not in controversy. The only question for determination in this case, as in the *Owens* case subsequent to 1917, was the heirship of the original allottee. In the cited case some 225 persons claimed to be such heirs, or assignees or vendees of heirs. In the instant case some 75 persons, including the petitioners, claimed to be such heirs, or assignees or vendees. In distinguishing the *Owens* case from *North American Oil Consolidated, supra*, the court said:

There, the equitable title was in fact in the North American, an ascertained person, and its title was challenged by the suit brought by the government. It simply was a controversy respecting the title between two ascertained persons. Here, the title was admittedly in a person occupying a particular status, to-wit, the heir to Thlocco, but the identity of the person occupying that status was not determined. He was an unascertained person. There, either the land belonged to the North American and the income therefrom was a part of its gross income, or it belonged to the United States and was exempt.

The same facts, we think, also distinguish our decision in *Aubrey Umsted*, 28 B. T. A. 176; affd., 72 Fed. (2d) 328.

In the case at bar the litigation was not a controversy respecting the title between two or more "ascertained" persons. There was no claim of defect in the title. The validity of the allotment was not questioned. Admittedly the title was in a person or persons occupying a particular status, to wit, the heir or heirs of "Ida", the original Indian allottee, or in the assignees or vendees of such heirs. Only the identity of the persons occupying that status was in controversy. They were "unascertained persons" and prior to the settlement of the litigation on January 30, 1928, when the appeal was dismissed and the judgment of the trial court became final, the income consisting of the oil royalties was being accumulated for the benefit of such "unascertained persons." This income should have been reported and the tax thereon paid by the several fiduciaries, and it is not thereafter taxable to the beneficiaries. We do not know, and it is immaterial, whether the fiduciaries did in fact return such income and pay the tax. That question is not presented here.

On authority of the cited decisions, we hold that the royalty received by the petitioners in 1928 from oil produced in 1927, to the extent that the amount so received constituted income accumulated for the benefit of unascertained persons, is not taxable to the petitioners as a part of their gross income for 1928. See also *Ferguson* v. *Forstmann* (C. C. A., 3d Cir.), 25 Fed. (2d) 47; *Hart* v. *Commissioner* (C. C. A., 1st Cir.), 54 Fed. (2d) 848; and *Buckley* v. *Commissioner* (C. C. A., 2d Cir.), 66 Fed. (2d) 394.

Petitioners received in 1928 the amount of $29,848.12 as royalty from oil produced and impounded in 1927. This entire amount, however, does not represent income accumulated for the benefit of unascertained persons. The parties stipulated and we have found as a fact that in the litigation involving the land herein referred to there was no basis for disputing the title of the petitioners to an undivided one-eighth, or 15 acres, interest in the whole 120 acres, and it was conceded in any event that petitioners would be entitled to a final judgment for at least that much. Thus petitioners acquired the 15 acres by purchase in 1912. Under the decisions of the Circuit Court in the *Owens* case, *supra*, it would follow that so much of the impounded royalty received by the petitioners from the trustee in 1928 as was allocable to the 15 acres, or one fourth of $29,-848.12, was not accumulated for unascertained persons, but was received by the petitioners by virtue of their ownership of the 15-acre interest acquired by purchase in 1912. Under the decision of the Supreme Court in the *North American* case, *supra*, the amount allocable to the 15-acre interest would be taxable to the petitioners

in 1928, the year in which it was received by them upon termination of the litigation, if the amount represents taxable income. But, as the Circuit Court of Appeals points out in its decision in the *Owens* case, impounded royalty acquired by purchase is taxable income only to the extent that the amount received exceeds the cost basis.

Here, the royalty or mineral rights in the land cost petitioner $58,681.50, but of this amount $32,600.82 has been allocated to the 30 acres sold to Morrison, and this leaves $26,080.68 unrecovered of the $58,681.50 expended by the petitioners in the compromise settlement. As has already been pointed out, petitioners received in 1928, in addition to anything received from Morrison, the sum of $29,848.12 from oil produced and impounded in 1927 and $21,753.13 from oil produced in 1928, making a total of $51,601.25. From this should be deducted the $26,080.68 unrecovered cost of the compromise settlement, which leaves a taxable profit of $25,520.57 from oil royalties to be taxed to petitioners in 1928. This $25,520.57 should of course be reduced by the depletion allowance to which petitioners are entitled under the applicable statute. While it is true that none of the $29,848.12 received in 1928 from oil produced and impounded in 1927, except that produced from the 15 acres which it was certain petitioners would retain, would be taxable to petitioners under the doctrine of the *Owens* case here followed, nevertheless the money when received would go to reduce the remaining basis of cost, and that is the way we have applied it in the foregoing statement and so to treat it does not in our opinion in any way do violence to the doctrine of the *Owens* case.

*Judgment will be entered under Rule 50.*