228 F.2d 667
 56-1 USTC P 9166
 UNITED STATES of America, Appellant,
v.
Dagmar S. COOKE, Appellee.
UNITED STATES of America, Appellant,
v.
Philip E. SPALDING, Appellee.
UNITED STATES of America, Appellant,
v.
Sophie Judd COOKE, Appellee.
UNITED STATES of America, Appellant,
v.
Muriel Howatt COOKE, Appellee.
 Nos. 14339-14342.
 United States Court of Appeals Ninth Circuit.
 Dec. 20, 1955.
 
 II. Brian Holland, Asst. Atty. Gen., Edward W. Rothe, Ellis N. Slack, Hilbert P. Zarky, David O. Walter, Sp. Assts. to Atty. Gen., Louis B. Blissard, U.S. Atty., Abbott M. Sellers, Sp. Asst. to Atty. Gen., Honolulu, Hawaii, for appellant.
 Anderson, Wrenn & Jenks, Heaton L. Wrenn, Marshall M. Goodsill, Honolulu, Hawaii, for appellees.
 Before DENMAN, Chief Judge, and ORR and LEMMON, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 The United States appeals from a judgment of the United States District Court for the District of Hawaii, holding Mrs. Dagmar Cooke entitled to recover capital gains tax paid by her on the difference in value of 2,000 shares in a corporation, Charles M. Cooke Ltd., when she received them, and the greater value of the property she received on the dissolution and distribution of the property of that corporation. The 2,000 shares she held under a conveyance of the shares to her as life tenant with other persons as remaindermen, the terms of which are later considered.
 
 
 2
 The United States contends that under the federal law Mrs. Cooke's holding of the property as life tenant creates a trust in her[1] and that she is liable for the tax on the capital gain in the shares. It relies upon 26 U.S.C. § 161(a) as follows:
 
 
 3
 ' § 161. Imposition of tax
 
 
 4
 '(a) Application of tax. The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held is trust, including--
 
 
 5
 '(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust'.
 
 
 6
 Strangely the United States, in discussing the word 'trust', ignores the limitation of the tax laws to a particular kind of trust covered by the regulations under Sec. 3791 of the Internal Revenue Code, 26 U.S.C. § 3791, a limitation relied upon by appellee. Regulation 118, Sec. 39.3797 limits the term 'trust' as follows:
 
 
 7
 'The term 'trust', as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under ordinary rules applied in chancery and probate courts'. (Emphasis added.)
 
 
 8
 Assuming but not deciding that Mrs. Cooke took title to the property in which she is a life tenant she did not do so for the purpose of 'conserving it as customarily required under ordinary rules applied in chancery and probate courts.'
 
 
 9
 The extraordinary difference between the conveyance of property of which she became life tenant and the above 'ordinary trust' appear in the italicized portions of the conveyance as follows:
 
 
 10
 'Know All Men by These Presents: That I, Richard A. Cooke, of Honolulu, Hawaii, in consideration of natural love and affection, hereby transfer and assign all of the following described property-- 2,000 shares of the capital stock of Charles M. Cooke, Limited, to my wife, Dagmar S. Cooke, to have and to hold the same to my wife for the term of her natural life, with the right to use all income therefrom, and after her death the remainder in equal shares to those who shall survive my wife of our children and of the issue of any of our children who shall predecease my wife, such issue taking per stirpes by right of representation, their heirs and assigns forever.
 
 
 11
 'My said wife shall have full authority to sell, transfer, and exchange said property and to reinvest the proceeds and to manage and control said property, reinvestments and proceeds, and to exercise all rights and power of ownership with respect thereto. The proceeds and all reinvestments shall likewise be subject to a life interest in my said wife with remainder over as aforesaid. My said wife shall hold said property during her life without impeachment for waste and shall not be required to give any security for the safekeeping or preservation of the same. No person purchasing from or otherwise dealing with my wife shall be liable to see to the application by my wife of the proceeds of any sale or to the propriety of any other action taken by my wife.[2]
 
 
 12
 That is to say, assuming Mrs. Cooke is a trustee, the first italicized clause provides that if she 'wastes' the property which she holds for others by, say, selling it for an inadequate consideration, she cannot be impeached therefor by the other members of the Cooke family, as she would be impeached 'under the ordinary rules applied in chancery.'
 
 
 13
 Again, assuming Mrs. Cooke is a trustee, the second italicized clause, 'no person purchasing from * * * my wife shall be liable to see to the application by my wife of the proceeds of any sale,' in effect provides that if any person, including the other members of the Cooke family, buys shares from Mrs. Cooke knowing she is to appropriate all the proceeds to her own use, there are not the customary remedies applied in chancery courts of obtaining a return of the stock from the knowing buyer.
 
 
 14
 Likewise the provision that 'no person * * * dealing with my wife shall be liable to see * * * to the propriety of any other action taken by my wife' in effect provides that if Mrs. Cooke conveyed by way of gift all the stock to a corporation, say, for a charitable use, the corporation could not be compelled to return it.
 
 
 15
 Finally the conveyance was designed to give Mrs. Cooke, the donor's wife, most the beneficial rights to the property with the remaindermen taking what was left at her death. The ordinary trust is a device whereby the holder of the legal interest protects, conserves or manages property not for his own benefit but for the benefit of others. Under some circumstances one beneficiary of a trust may act as a trustee for others but courts of chancery in those circumstances exercise close supervision over such a trustee unlike in this case where the only remedy left to the remaindermen by the conveyance was to sue for conversion if Mrs. Cooke intentionally destroyed the estate.
 
 
 16
 To construe the regulation otherwise would violate the rule of construction, that words of a law should be given effect and not made negatory. We hold that, assuming the contention of the United States that the conveyance created a trust in Mrs. Cooke, it is not an 'ordinary trust' and hence not taxable. What the Tax Bureau well may have had in mind in making this regulation is to relieve the Bureau's officers from construing just such curiously involved conveyances as this of property to a life tenant and remaindermen.
 
 
 17
 The Bureau also may have conceived that here is a mere postponement of the tax on capital gains. When the successor Cookes and Spaulding obtain their full interest in the shares on their subsequent sale they would realize a gain on the sale of the shares of the difference between the sales receipts and the value of the shares on the date of the gift of their interest in them. 26 U.S.C. § 113(a)(2).
 
 
 18
 It is contended that the following phrase of the instrument creating Mrs. Cooke's rights with regard to the shares 'my wife shall have full authority to sell, transfer and exchange said property * * * and to exercise all rights and powers of ownership with respect thereto' gives her the power and the duty to pay the taxes on the capital gain arising from the transfer of the shares. We do not agree. Our discussion above has been based on the government's contention that Mrs. Cooke was a trustee holding the shares for the benefit of the remaindermen. We do not think she had such a trustee title to the shares. She is not in any way the owner of the shares,[3] and is not a trustee. Her estate is only a life estate. Not being the owner of the shares nor the owner of the capital gain from the disposition of the shares there is no merit to the contention that 'she is liable for the tax resulting from the capital gain as the owner thereof.'
 
 
 19
 The above considered case is 14339. In the remaining three cases the parties have agreed to abide the decision in Mrs. Cooke's case.
 
 
 20
 The judgments are affirmed.
 
 
 21
 LEMMON, Circuit Judge.
 
 
 22
 I dissent.
 
 
 23
 Mrs. Cooke filed two income tax returns for the year 1942, one a fiduciary and the other an individual return. In each she reported the capital gain here involved and in each she disputed any liability. However, she paid the tax computed thereon. The tax was computed against her individually and as life tenant. Thereafter, she filed with the Commissioner a claim for refund. The claim being disallowed, the instant actions were instituted.
 
 
 24
 The majority hold that the instrument under which Mrs. Cooke received the property did not create a trust since she was not as trustee required to conserve it "as customarily required under ordinary rules applied in chancery and probate courts." The sweeping provisions of the agreement, emphasized by the majority, vested in her ownership and control and removed it from an 'ordinary trust'. In addition to the provisions pointed out by the majority, she had during her lifetime "the right to use all income therefrom" and "my wife shall have full authority to sell, transfer and exchange said property * * * and to exercise all rights and powers of ownership with respect thereto".
 
 
 25
 The burden was on Mrs. Cooke to establish her right to the refund. If she was liable for the tax upon any theory, she may not recover. I am satisfied that she is liable for the tax resulting from the capital gain as the owner thereof. Capital gain is treated as income for the purpose of taxation. Mrs. Cooke had the absolute right of disposition of the income. It was subject to her unfettered command and she was free to enjoy it at her own option. Taxation of net income does not depend upon whether the owner saves, spends or gives it away.[1]
 
 
 26
 I would reverse the judgments in these actions.
 
 
 
 [1]
 It is conceded that Mrs. Cooke is not a trustee under the Hawaiian law, but that the federal law controls
 
 
 [2]
 The remainder of the instrument is:
 'The above described property and any other shares of stock in which my wife may have a life interest pursuant to the provisions hereof shall be issued or registered in the name of my said wife as life tenant and shall be subject to transfer pursuant to the sole assignment or endorsement of my wife; and all corporations issuing such stock and transfer agents and registrars therefor shall permit transfers thereof pursuant to assignment or endorsement thereof by my wife. My wife shall have full right during her life to vote any such shares of stock in which she shall have a life interest as aforesaid, upon all questions and matters which may come before meetings of stockholders of corporations issuing such stock, whether relating to the ordinary business of such corporations or otherwise, including specifically but without limitation of the generality of the foregoing, amendments of articles of association, amendments by bylaws, increases and decreases of capital stock, and dissolutions. All stock dividends and rights to subscribe shall be treated as principal and all cash dividends, whether regular or extraordinary, unless paid out of capital, shall be treated as income.'
 
 
 [3]
 Although exempted from liability for waste she would still be liable for conversion of the principal and these capital gains
 
 
 [1]
 Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Musselman Hub-Brake Co. v. Commissioner of Internal Revenue, 6 Cir., 139 F.2d 65; Hogle v. Commissioner of Internal Revenue, 10 Cir., 132 F.2d 66, 71