278 F.2d 127
 UNITED STATES of America, Appellant,
v.
Dale King DE BONCHAMPS, Appellee.
UNITED STATES of America, Appellant,
v.
Winston S. COWGILL and Geraldine King Cowgill, Appellees.
UNITED STATES of America, Appellant,
v.
Ada N. KING, Appellee.
 Nos. 16098-16100.
 United States Court of Appeals Ninth Circuit.
 April 8, 1960.
 
 Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, James P. Turner, I. Henry Kutz, Lee A. Jackson, Attorneys, Department of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., San Francisco, Cal., for appellant.
 Henry V. Colby, Joseph B. McKeon, San Francisco, Cal., for appellee.
 Before CHAMBERS, STEPHENS, POPE, BARNES, HAMLEY, HAMLIN, JERTBERG, MERRILL and KOELSCH, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 These three cases, consolidated for our decision, present the question whether legal life tenants are taxable either as owners or as fiduciaries on capital gains realized in sales of portions of the corpus. In all three cases, gains were realized by sales of estates assets. Taxes were paid thereon by the life tenants as owners; claims for refund were made and these actions were brought to recover such refunds. In each action the United States has counterclaimed for the amount of tax payable by the taxpayer as fiduciary of a trust.[1] In each case summary judgment by the trial court was rendered in favor of the taxpayer. Appeals have been taken by the United States.
 
 
 2
 The life estates were created by will under California law and grant broad powers to the life tenants to use and consume the corpus for their needs, maintenance and comfort.
 
 
 3
 In the De Bonchamps and Cowgill cases, the taxpayers are daughters of the testator. The will granted one-half of the estate to each daughter for her use during her life. Upon her death, the remainder was to go to her children then living and the issue of any deceased child per stripes. It provided:
 
 
 4
 "Each of my said daughters may consume, use, invest and reinvest her share and the income therefrom for her needs, maintenance and comfort during her life without any restriction and her children and the issue of any predeceased child shall take only what remains of her share on her death."
 
 
 5
 In the King case, the taxpayer is the wife of the testator. The will granted to her the entire estate for her use during her life, the remainder upon her death to go to the daughters of the decedent and the issue of any deceased child per stripes. It provided:
 
 
 6
 "My said wife in her discretion may convert any of said property into cash and she shall have and enjoy the rents, issues, income and profits during her life and she also shall be free to invade and use the corpus for her own needs, maintenance and comfort as well as for those of my daughters and their issue or any of them. I declare that it is my wish and intention to have my wife enjoy the free use of said corpus and income during her natural life and that my daughters or their issue, as heretofore provided, shall have and take what is left thereof at the time of her death."
 
 
 7
 The first contention of the United States is that under these broad powers the life tenants are to be treated and taxed as the beneficial owners of the capital gains.[2]
 
 
 8
 Under California law, the estates so created are regarded as life estates with powers of consumption annexed. The power to consume does not enlarge the estate into a fee. Adams v. Prather, 1917, 176 Cal. 33, 167 P. 534; Luscomb v. Fintzelberg, 1912, 162 Cal. 433, 123 P. 247; In re Estate of Smythe, 1955, 132 Cal.App.2d 343, 282 P.2d 141. Capital gains accrue to the principal and, subject to the life tenant's powers of use and consumption, belong to the remainderman. California Civil Code, § 730.05(2).
 
 
 9
 The United States refers to language in Corliss v. Bowers, 1930, 281 U.S. 376, 377, 50 S.Ct. 336, 74 L.Ed. 916, and Burnet v. Wells, 1933, 289 U.S. 670, 677-678, 53 S.Ct. 761, 77 L.Ed. 1439. In the former the Supreme Court stated:
 
 
 10
 "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed — the actual benefit for which the tax is paid."
 
 
 11
 In Burnet v. Wells, the court stated [289 U.S. 677, 53 S.Ct. 763]:
 
 
 12
 "In these and other cases there has been a progressive endeavor by the Congress and the courts to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment or fruition. * * *
 
 
 13
 "* * * Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. * * Government in casting about for proper subjects of taxation is not confined by the traditional classifications of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. * * * Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis."
 
 
 14
 The United States contends that the right of these taxpayers to create and consume statutory items of income renders it reasonable and just to deal with them as owners of such income items. It asserts that the power possessed by the life tenants here is similar to the power to dispose and the right to receive which were held sufficient for attribution of income in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75, and North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197.
 
 
 15
 Of the cases relied upon by the United States, those appearing to us as most pertinent are cases dealing with tax problems arising in the Clifford area[3] and, more specifically, under the Mallinckrodt case.[4] The rules of these cases formed the basis for Treasury Regulations 118: §§ 22(a)-21, 22 (1945, amended 1947) and for the 1954 amendment of the Revenue Code, Subpart E of Part I of Subchapter J, dealing with estates, trusts, beneficiaries and decedents. By Section 671, the attributes of exclusiveness attach to these code provisions. They deal for the most part with situations in which the grantor, notwithstanding his having parted with ownership, is nevertheless treated as the owner for tax purposes. Section 678 deals with the situation which confronts us here. It provides in pertinent part:
 
 
 16
 "(a) General rule. — A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which:
 
 
 17
 "(1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself * * *."
 
 
 18
 While Subpart E deals with trust situations, nevertheless we feel that Section 678 should be recognized as applicable to the instant cases. Here it is contended that, notwithstanding lack of ownership, a taxpayer is to be treated as owner by virtue of his beneficial interest in the capital gain. Congress, in Section 678, has spoken positively upon this subject. This Court, in 1949, recognized the Clifford regulations to have a persuasive effect in a non-trust case. Hawaiian Trust Company v. Kanne, 9 Cir., 1949, 172 F.2d 74.
 
 
 19
 The question then is whether the powers of these taxpayers may be said to constitute a power to vest the corpus in themselves.
 
 
 20
 We have concluded that, upon the record before us, the powers of these life tenants are not the equivalent of a power to vest in themselves the corpus of the estate or the capital gains in question. A life tenant under these testamentary provisions may not in any manner control the disposition of the corpus save by consuming it for the enumerated purposes. She may not give it away nor make testamentary disposition of it. She has no power of appointment. She may not change the beneficiaries nor reapportion their shares.
 
 
 21
 Nor has any one of these life tenants the unlimited power to take the corpus of the estate to herself. Her power to consume is expressly limited to her needs, maintenance and comfort. Nor may it be said that the boundaries of such power as so expressed are so vague as to constitute no real limitation upon the power to consume. Smither v. United States, D.C.S.D.Tex.1952, 108 F.Supp. 772, adopted by reference, United States v. Smither, 5 Cir., 1953, 205 F.2d 518.[5]
 
 
 22
 The power of the life tenant which is granted here is essentially the power to determine for herself her own personal mode of living. Such control as she may have over the disposition of the corpus is necessary to such purpose. Any beneficial interest she may have in the corpus is limited to the extent to which it is required to effectuate such purpose. It is not a situation where failure of the life tenant to take to herself a portion of the corpus may be regarded as a gift of such portion to the remainderman.[6] There is no right to take which she has forborne to exercise.
 
 
 23
 Nor has it been contended that a remainder in any of these cases is in truth fictitious and that the expressed limitation upon its consumption is therefore falsely apparent rather than real. There is nothing in the record to indicate in any case that, by exercise of these limited powers, a full consumption of the corpus was reasonably to be expected. Nor is there any suggestion that these limitations have not been respected by these life tenants.
 
 
 24
 Upon the face of the record then, the bestowal of the powers of use and consumption would appear to be pursuant to legitimate and good faith estate planning: to the normal desire of a husband or father that, to the fullest measure within his control, his wife or daughter may realize the needs and comforts of life. Upon the face of the record, this arrangement does not suggest a device the choice of which has been directed by motives of tax avoidance. The choice between a grant in fee or a life estate with powers of consumption, from all that appears in this record, was based upon the desire of the testator to retain control over the disposition of the remainder while assuring to his wife or daughter the highly personal right to live her life as she might choose.
 
 
 25
 We conclude that the capital gains in question may not be taxed to these taxpayers as owners.
 
 
 26
 The alternative contention of the United States (in support of its counterclaims) is that the corpus of the estate, for purposes of income taxation, should in each case be recognized to constitute property held in trust and that the life tenant should be taxable as trustee for capital gains realized by the estate.
 
 
 27
 The United States relies on 26 U.S.C. § 641(a), which reads:
 
 
 28
 "Imposition of tax
 
 
 29
 "(a) Application of tax. — The taxes imposed by this chapter upon individuals shall apply to the taxable income of estates or of any kind of property held in trust, including —
 
 
 30
 "(1) income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust."[7]
 
 
 31
 In United States v. Cooke, 9 Cir., 1955, 228 F.2d 667, this contention was made by the United States and was rejected by this Court. The Court of Claims recently has reached the opposite result. Weil v. United States, Ct.Cl., 180 F. Supp. 407. The United States now suggests that in this respect Cooke should be re-examined and overruled. Such is the course we have chosen to adopt.
 
 
 32
 Cooke rejected the contention that property subject to a life estate should be treated as property held in trust upon the ground that the life estate there under scrutiny did not square with the definition of "trust" set forth in Regulation 118, § 39.3797-3:
 
 
 33
 "The term `trust,' as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under ordinary rules applied in chancery and probate courts."
 
 
 34
 Cooke reasoned that, by this definition, application of 26 U.S.C. § 641(a) had been limited to a particular kind of trust, namely, an ordinary trust; more specifically, one in which the duties of the trustee in protection and conservation of trust assets are those customarily required under ordinary rules of equity. It was held (228 F.2d at page 668):
 
 
 35
 "Assuming but not deciding that Mrs. Cooke took title to the property in which she is a life tenant she did not do so for the purpose of `conserving it as customarily required under ordinary rules applied in chancery and probate courts.'"
 
 
 36
 We address ourselves first to the proposition embraced by Cooke that the definition served to exempt from taxation under 26 U.S.C. § 641(a) all trusts save those in which the trustee's duties of protection and conservation were those customarily required under ordinary rules of equity.
 
 
 37
 The United States contends, and we agree, that in Cooke undue emphasis and significance were read into the regulation's reference to the customary requirements of protection and conservation. In searching for the meaning of the distinction which this regulation makes (between ordinary trusts and other types of trusts), we should be guided by the fact that this is a tax measure. The distinction intended then should be meaningful and purposeful in a tax context.
 
 
 38
 Certainly an active trust can be effectively created in which extraordinary powers or freedom from responsibility or liability are given to the trustee.[8] Absent the regulation, we have no doubt that a trust estate so created would have been held a taxable estate. Under the regulation as construed in Cooke, however, such an estate would have been held not an ordinary trust and thus not taxable. The effect of the regulation so construed is thus to exclude from taxation property which theretofore was taxable. Such could hardly have been the intent in the light of the recognized "legislative design to reach all gain constitutionally taxable unless specifically excluded." General American Investors Co. v. Commissioner, 1955, 348 U.S. 434, 436, 75 S.Ct. 478, 479, 99 L.Ed. 504; see also Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 429-430, 432, 75 S.Ct. 473, 99 L.Ed. 483. Nor can we find tax significance in isolating those trusts in which the duties of the trustee to conserve and protect the estate for others than himself are less strict than is customarily the case.
 
 
 39
 The United States asserts that this definition should be construed as an effort to distinguish the so-called business trust from the ordinary type of trust. Reason would seem to support this construction. The regulation in question did not appear until eighteen years after the word "trust" was first used in the code with reference to a separate taxable entity[9] and at a time when the problem of separating associations from trusts was receiving attention.[10] The proposed construction has tax significance. It does not exclude property from taxation; rather, it aids in the determination of whether a taxable entity should be taxed as a trust or as a corporation.
 
 
 40
 Under the language of Regulation 118, then, our concern for what is "customary" should not be directed to the nature and extent of the required protection and conservation (in which event, the taxable status of property could be made to depend upon the existence of an infinite number of details, all of which might be said to be "customary") but rather to the purposes of the arrangement.
 
 
 41
 Accepting such a construction, our final question is whether in these cases the corpus of the estate can be considered "property held in trust" under Section 641(a).
 
 
 42
 We may note that Cooke did not concern itself with labels. We did not there hold that, for tax purposes, a life estate as such cannot be regarded as a trust. As heretofore noted, our concern there was with the extent of the duties of that particular life tenant in comparison with those customarily imposed upon a trustee.
 
 
 43
 Nor have other courts, in construing the phrase "property held in trust," felt themselves bound to regard Section 641(a) as applying only to "technical trusts." Instead, they have remained mindful of the legislative design to reach all income constitutionally taxable and of the fact that the word "trust," in the sense of a separate taxable entity, was originally used in the context of this design. General Investors v. Commissioner, supra; Commissioner of Internal Revenue v. Glenshaw Glass Co., supra; Smietanka v. First Trust & Savings Bank, supra, footnote 9. The inquiry has been whether the relationship created is one which might be said to be "clothed with the characteristics of a trust."[11]
 
 
 44
 In Weil v. United States, supra, it is stated [180 F.Supp. 411]:
 
 
 45
 "* * * we believe that the taxability of the gains involved here should depend, not on whether there is a separation of the legal and equitable interests in the life estate, but on the relationship between the holder of the life interest and the owners of the succeeding future interests."
 
 
 46
 The duties of a life tenant have been characterized by the California courts as "in the nature of a trust," King v. Hawley, 1952, 113 Cal.App.2d 534, 538, 248 P.2d 491, 494, and, by Bogert, as a "quasi-trust," 1 Bogert, Trusts and Trustees, § 27, pp. 214-219 (1951). See also Restatement, Property, § 204, Comment a (1936) and 1948 Supplement; Annotation, 137 A.L.R. 1054 (1942). The Restatement of the Law of Property, § 202, comment g, notes that the life tenant may be required to post security for the performance of his fiduciary duties by a court of equity. Section 202, comment d, indicates that, were the life interest alone in trust, the relationship between the trustee and the remainderman would be identical to that obtaining between an ordinary life tenant and the remainderman.
 
 
 47
 We have in the corpus of each estate an expressly created ascertainable entity. In each life tenant we have a person, notwithstanding her extensive powers of beneficial use, who occupies a fiduciary relationship with the remaindermen respecting that estate, with the duty to maintain for the remaindermen such as is not required for need, maintenance and comfort. Such a relationship, in our view, is clothed with the characteristics of a trust.
 
 
 48
 We conclude that the capital gain here involved is taxable as income of property held in trust under 26 U.S.C. § 641(a).
 
 
 49
 In each case: reversed and remanded with instructions that summary judgment be set aside and for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 The De Bonchamps case involves tax for the years 1954 ($6,622.17 as owner or $3,806.07 as fiduciary) and 1955 ($9,612.56 as owner or $6,690.31 as fiduciary). It has been stipulated that this case is representative of the Cowgill case, and no record on the latter case is before us. The King case involves tax for the year 1955 ($5,666.88 as owner or $3,027.69 as fiduciary)
 
 
 [2]
 No issue is raised as to the ownership of income other than capital gains. It is apparently conceded that, under California law, the ownership of all such income under these facts is vested in the life tenant
 
 
 [3]
 Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, dealing with powers held by the grantor of a trust estate
 
 
 [4]
 Mallinckrodt v. Nunan, 8 Cir., 1945, 146 F.2d 1, dealing with powers in one other than the grantor
 
 
 [5]
 California's attitude with reference to these powers is indicated in King v. Hawley, 1952, 113 Cal.App.2d 534, 248 P.2d 491, 496, where (quoting with approval from Corpus Juris) it is stated:
 "A power to consume or dispose of property for the donee's `benefit' is broader than one for his support or maintenance, and, in general, includes whatever promotes his personal prosperity and happiness, so that he may consume or sell the property as he chooses, without limitation except that of good faith. Likewise, a power of sale or disposition for the donee's `comfort' is broader than one for his maintenance, and encroachment on the property is not restricted to the necessaries of life, but may include things which bring ease, contentment, or enjoyment to the donee, and, in general, such a power authorizes the expenditure of the property or its proceeds for any purpose, consistent with the donee's former manner of living and station in life, and taking into consideration the value of the property, which the donee thinks will give him personal comfort."
 
 
 [6]
 Compare Smith v. United States, 5 Cir., 1959, 265 F.2d 834; Spies v. United States, 8 Cir., 1950, 180 F.2d 336; Mallinckrodt v. Nunan, supra, footnote 4; Jergens v. Commissioner, 5 Cir., 1943, 136 F.2d 497; Irish v. Commissioner, 3 Cir., 1942, 129 F.2d 468; Richardson v. Commissioner, 2 Cir., 1941, 121 F.2d 1
 
 
 [7]
 Subsection (b) of § 641 requires computation and payment of the tax by the fiduciary. § 6012(b) (4) requires the fiduciary of a trust to make a return and § 7701(6) defines fiduciary as meaning "a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person."
 
 
 [8]
 See, Restatement (Second), Trusts, § 187, comment j; § 222 (1957); 1 Scott, Trusts, § 99.3 at 744 (2d Ed., 1956)
 
 
 [9]
 See, Smietanka v. First Trust & Savings Bank, 1922, 257 U.S. 602, 607, 42 S.Ct. 223, 66 L.Ed. 391
 
 
 [10]
 Morrissey v. Commissioner, 1935, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263
 
 
 [11]
 Hart v. Commissioner, 1 Cir., 1932, 54 F.2d 848, 851; Ferguson v. Forstmann, 3 Cir., 1928, 25 F.2d 47, 49; see Commissioner of Internal Revenue v. Owens, 10 Cir., 1935, 78 F.2d 768; Goforth v. Commissioner, 1935, 32 B.T.A. 1206, 1215-1217. But see Lee McRitchie, 1956, 27 T.C. 65. We regard as distinguishable Shea v. Commissioner, 1934, 31 B.T.A. 513, and G.C.M., 14693, 14-1 Cum.Bull. 197 (1935) holding life estates not to be taxable as trusts. These appear to be situations in which vested remaindermen had present rights to the gain in question and thus were to be regarded as present owners and individually taxable as such. See Restatement Property, § 126(e) (1936); 1 Orgel, Valuation under the Law of Eminent Domain, § 118 (2d Ed., 1953)
 
 
 
 50
 JERTBERG, Circuit Judge (dissenting).
 
 
 51
 I am in complete agreement with that portion of the majority opinion which concludes by stating, "We conclude that the capital gains in question may not be taxed to these taxpayers as owners." However, I must part company with the majority opinion wherein it concludes "that the capital gain here involved is taxable as income of property held in trust under 26 U.S.C. § 641(a)."
 
 
 52
 While the imposition of a tax under the circumstances reflected in the record may be a consummation devoutly to be desired, such consummation should be effected by Congress and not by the judiciary. In my view Congress has not done so, although there is recent indication that Congress intends to do so shortly. H.R. 9662 was introduced by the chairman of the House Ways and Means Committee on January 18, 1960. It is known as the "Trust and Partnership Income Tax Revision Act of 1960". On January 28, 1960 the bill was committed to the Committee of the whole House. H.R. 9662 contains a provision amending Section 641 of the Revenue Code of 1954, by adding a new sub-section, imposing upon the legal life tenant the liability to report and pay a tax on gross income not otherwise taxable. The new sub-section also provides that the legal life tenant shall be deemed to be a fiduciary. The text of the portion of the bill which contains the amendment to Section 641 of the Revenue Code is as follows:
 
 
 53
 "Title I — Estates and Trusts [Bill Sec. 101]
 
 
 54
 "Sec. 101. Imposition of Tax-Amendments of Section 641.
 
 
 55
 [Bill Sec. 101(a)]
 
 
 56
 "(a) Application of Tax. — Section 641 is amended by adding at the end thereof the following new subsection:
 
 
 57
 "`(c) Legal Life Estates and Other Terminable Legal Interests. — If —
 
 
 58
 "`(1) any person owns a legal interest in property which may terminate on the lapse of time on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, and
 
 
 59
 "`(2) at any time during any calendar year there is gross income attributable to such property —
 
 
 60
 "`(A) which (but for this subsection) would not be currently includible in the gross income of any person because such person is not then ascertainable or for any other reason, but
 
 
 61
 "`(B) which would be currently includible in the gross income of a trust with respect to such property if such trust existed (determined without regard to subpart E),
 
 
 62
 then for purposes of this subchapter and subtitle F, a trust shall be deemed to exist for such calendar year with respect to all gross income described in paragraph (2) attributable to such property, and the person (or persons) described in paragraph (1) shall be deemed to be a fiduciary of such trust.'"
 
 
 63
 The congressional activity thus cited establishes, at the least, grave congressional doubt that under current legislation a life estate of the character here involved can be deemed to be a trust and the legal life tenant deemed to be a fiduciary. Further, the proposed amendment of Section 641 is consistent with past congressional policy to accord separate treatment to legal life tenants. Thus while Sections 1 and 641 of the Internal Revenue Code of 1954 and their predecessors which impose tax liability with respect to capital gains accruing to principal refer only to individual owners and estates and trusts, and not to life tenants, other sections of the Code deal specifically with legal life tenants. Section 62 deals with "adjusted gross income". Section 62(6) provides:
 
 
 64
 "(6) Certain deductions of life tenants and income beneficiaries of property. — In the case of a life tenant of property, or an income beneficiary of property held in trust, or an heir, legatee, or devisee of an estate, the deduction for depreciation allowed by section 167 and the deduction allowed by section 611.
 
 
 65
 "Nothing in this section shall permit the same item to be deducted more than once."
 
 
 66
 Section 167 deals with depreciation. Section 167(g) provides:
 
 
 67
 "(g) Life tenants and beneficiaries of trusts and estates. — In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. In the case of an estate the allowable deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each."
 
 
 68
 Section 611 deals with depletion. Section 611(b) provides:
 
 
 69
 "(b) Special rules. —
 
 
 70
 "(1) Leases. — * * *
 
 
 71
 "(2) Life tenant and remainderman. — In the case of property held by one person for life with remainder to another person, the deduction under this section shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant.
 
 
 72
 "(3) Property held in trust. — * * *
 
 
 73
 "(4) Property held by estate. — * * *."
 
 
 74
 Section 169 deals with amortization of grain-storage facilities. Section 169(g) provides:
 
 
 75
 "(g) Life tenant and remainderman. — In the case of property held by one person for life with remainder to another person, the amortization deduction provided in subsection (a) shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant."
 
 
 76
 Congress has made provision for the special case of legal life tenants in regard to depletion, depreciation and amortization, but in my view has failed to do so in the case of capital gains or losses realized with respect to life estate principal although under existing law a trustee is made liable for collection and payment of tax on capital gains.
 
 
 77
 The portion of the majority opinion with which I am dealing expressly overrules the decision of this Court in United States v. Cooke, 9 Cir., 1955, 228 F.2d 667, on the ground that in Cooke "undue emphasis and significance were read into the regulation's reference to the customary requirements of protection and conservation." In Cooke the Court simply held that "assuming the contention of the United States that the conveyance created a trust in Mrs. Cooke, it is not an `ordinary trust' and hence not taxable." Further in the opinion the Court stated:
 
 
 78
 "Our discussion above has been based on the government's contention that Mrs. Cooke was a trustee holding the shares for the benefit of the remaindermen. We do not think she had such a trustee title to the shares. She is not in any way the owner of the shares, and is not a trustee. Her estate is only a life estate."
 
 
 79
 It appears to me that the Court would have reached the same result absent the regulation.
 
 
 80
 The majority opinion is grounded on two propositions: First, the "legislative design to reach all gain constitutionally taxable unless specifically excluded," and, second, the life estates in question are "clothed with the characteristics of the trust." The legislative design is to tax the owners of the gain, or in the case of trusts and estates to place on the fiduciary the collection and payment. The majority opinion correctly holds that the legal life tenants are not the owners of the gains in question. Admittedly Congress has not placed on legal life tenants as such the duty of collection and payment. H.R. 9662 if enacted into law would do so. In considering the legislative design one must bear in mind the admonition of the Supreme Court of the United States in Smietanka v. First Trust & Savings Bank, 257 U.S. 602, at page 605, 42 S.Ct. 223, at page 224, 66 L.Ed. 391, in which the Court stated:
 
 
 81
 "It may be that Congress had a general intention to tax all incomes whether for the benefit of persons living or unborn, but a general intention of this kind must be carried into language which can be reasonably construed to effect it. Otherwise the intention cannot be enforced by the courts. The provisions of such acts are not to be extended by implication. Treat v. White, 181 U.S. 264, 267 [21 S.Ct. 611, 45 L.Ed. 853]; United States v. Field, 255 U.S. 257 [41 S.Ct. 256, 65 L.Ed. 617]; Gould v. Gould, 245 U.S. 151, 153 [38 S.Ct. 53, 62 L.Ed. 211]."
 
 
 82
 Attention is also called to the following quotation from Crooks v. Harrelson, 282 U.S. 55, at page 61, 51 S.Ct. 49, at page 51, 75 L.Ed. 156:
 
 
 83
 "Finally, the fact must not be overlooked that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness. In United States v. Merriam, 263 U.S. 179, 187-188, [44 S.Ct. 69, 71, 68 L.Ed. 240] after saying that `in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used,' we quoted with approval the words of Lord Cairns in Partington v. Attorney-General, L.R. 4 H.L. 100, 122, that `if the Crown seeking, to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute, what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, where you can simply adhere to the words of the statute'"
 
 
 84
 Under the De Bonchamps and Cowgill wills the legal life tenants had the power to consume the corpus and the income therefrom for their needs, maintenance and comfort during their lives without any restriction, and the remaindermen were to take only what remains at their deaths. The will in the King case is about the same except the legal life tenant could use and consume the corpus and income not only for her own needs, maintenance and comfort but as well for the needs, maintenance and comfort of her daughters and their issue. I am unable to agree that by such language trusts were created. Clearly under California law the life tenants in these cases are not trustees. Hardy v. Mayhew, 158 Cal. 95, 110 P. 113; Skellenger v. England, 81 Cal.App. 176, 253 P. 191; California Civil Code, Section 2221 et seq. In my view they should not be made such for federal tax purpose by judicial pronouncement.
 
 
 85
 I would affirm the judgments entered below.
 
 
 86
 BARNES, Circuit Judge (dissenting).
 
 
 87
 I join Judge JERTBERG in dissenting from the majority decision of the Court, and concur in his opinion.