Marrell P. AXE and Ruth Axe, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Marlene FITCH, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. W–2005, W–2004.

United States District Court
D. Kansas.

Jan. 13, 1961.

Donald L. Cordes and Richard C. Harris, of Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., for plaintiffs.

Harvey G. Schneider, Dept. of Justice, Washington, D. C., for defendant.

HILL, Chief Judge.

These are actions for the refund of income taxes, penalties and interest for the calendar years 1953 and 1954.

All of the material facts have been stipulated.

The controversy arises from the sale of certain real estate in the years 1953 and 1954.

The taxpayers, Ruth Axe (formerly Ruth Wilson) and Marlene Fitch, are mother and daughter.

Prior to September 4, 1953, Ruth Axe held a life estate in 240 acres of land and improvements under the will of her grandfather, T. O. Tanton. On September 4, 1953, the taxpayer, Axe, and her daughter, Marlene Fitch, who held a contingent remainder in the same property, entered into an agreement to sell the property to Ferdinand Lampe.

The agreement of sale stipulated a purchase price of $27,764; $20,388.20 was paid to the sellers, and $7,375.80 was retained by the purchaser to pay for premium payments on an insurance policy on the life of the contingent remainderman. The agreement for purchase provided the State Bank of Colwich, Colwich, Kansas, shall hold title to and exercise all rights of ownership in the policy of life insurance. The agreement provided for the payment of the proceeds to the purchaser (Lampe) if the contingent remainderman predeceased her mother. The policy and

rights thereunder were assigned to the contingent remainderman, upon the death of her mother. Thereafter, a deficiency in income tax was assessed against Ruth Axe in the sum of $195.55, including penalties and interest, and a deficiency against Marlene Fitch in the sum of $763.72, including penalties and interest.

It is the contention in both of these cases of the plaintiffs that the Commissioner erred in using a sales price of $27,764 in computing long-term capital gain realized. The taxpayers contend the basis of computation should have been $20,388.20, the cash actually received in hand.

The plaintiffs rely on the principle that income is not taxable to a cash basis taxpayer until actually received. To counter this defendant says the plaintiffs overlook Section 111(b) of the Revenue Code of 1939, 26 U.S.C.A. § 111(b) as follows:

> "The amount realized from the sale or other disposition of property shall be the sum of any money received *plus the fair market value of the property* (other than money) *received.*"

I think it necessary to now treat these contentions in regard to this 1953 sale as applicable to Ruth Axe and Marlene Fitch separately, as it seems to me, that while the defendant argues identically the same in each case, the terms of the sale agreement require a different treatment.

It is evident from the nature of the agreement that the purchaser was concerned whether Ruth Axe as the owner of the life estate would predecease her daughter, Marlene Fitch, who is the contingent remainderman. The agreement provides for a withholding of $7,375.80 for application toward the premium of a life insurance policy on Marlene Fitch to protect the purchaser in the event she dies before her mother. Upon the death of the life tenant leaving the remainderman, the remainderman was and is to receive any part of the $7,375.80 (less a discount not material) which the pur-

chaser had not already paid to the trustee in the form of insurance premiums, all of the rights under the policy would be assigned to Marlene Fitch, the remainderman. The contract also provides that if the purchaser defaults in his premium payments he loses his rights in the policy and becomes liable for any portion of the $7,375.80 not already paid. If the contingent remainderman dies first the purchaser would relinquish the property in return for the proceeds of the policy and the life tenant would regain her life estate and retain the cash already received. The land would then pass upon the death of the life tenant to the alternative devisees under the will of T. O. Tanton.

The Government concedes the general principle of taxation that a cash basis taxpayer is not required to pay tax on money until it is received or is placed in a position to be subject to the taxpayer's use and enjoyment without substantial restriction. However, they contend in both cases that whether or not the life tenant or remainderman survives the sellers will receive a benefit. It is argued that the taxpayers have received the property right to $6,826.30, the fair market value of the cost of the policy.

It is true in the case of Marlene Fitch that in all probability at some time she may receive the proceeds of the policy or its equivalent. But purchase money held in escrow does not enter into taxable income until it is released unconditionally to the sellers. Waggoner v. Commissioner, 9 B.T.A. 629; Merren v. Commissioner, 18 B.T.A. 156; Bassett v. Commissioner, 33 B.T.A. 182. See also Mertens, Law of Federal Income Taxation, Vol. 2, § 12.105 (Revised Edition).

In Mertens, it is said:

> "A taxpayer not having unrestricted enjoyment of the income, and who may never receive it, does not fall within the operation of the 'claim of right' theory, and there is no theory upon which income might be accrued upon his behalf. The usual rule in such cases is that

at the time of the termination of the escrow agreement or receivership the prevailing party pays the tax upon the accumulated income which is released to him."

The Government dismisses the escrow case citations as being "inapposite" because there was no true escrow agreement here. The matter is not so easily disposed of. The fact remains that no one knows who will ultimately receive the proceeds from the policy.

The argument that Marlene Fitch has received "property" (other than money) seems to me fallacious. Every contract to receive something in the future has some worth as property. But until it is received it is not income. See Harold W. Johnston v. Commissioner, 14 T.C. 560 and Bedell v. Commissioner, 2 Cir., 30 F.2d 622. Of course, promissory obligations, such as notes, bonds, and checks, may be treated as property because they are "freely transferable" in commerce. It is the equivalent of cash. See Ennis v. Commissioner, 17 T.C. 465, and McLaughlin v. Commissioner, 7 Cir., 113 F.2d 611. In our case even though the amount which is ultimately received can be accurately calculated, performance remains uncertain. There are several contingencies which removes this case from those where the benefit is certain and fixed though postponed, and thus our case is even stronger.

The Government argues that the contingency is slight and uses actuarial percentages to calculate worth. This theory was rejected in Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 552, 75 L.Ed. 1143.

"The liability for income tax ultimately can be fairly determined without resort to mere estimates, assumptions, and speculations. When the profit, if any, is actually realized, the taxpayer will be required to respond. * * * The promise was in no proper sense equivalent to cash."

In the above case, the only uncertainty was as to amount, here there is uncertainty as to any payment ever being received.

These observations apply with even greater force to the case of Ruth Axe. While the Government makes the identical argument in both cases, the facts just will not support this reasoning. Not only in this case is the taxpayer a cash basis taxpayer and has not received the $7,375.80, but furthermore even when it is paid, the life tenant has no right to receive the same. The life tenant is precluded from any use or enjoyment of this policy or its value. Giving the Government the benefit of all the assumptions it raises in its argument, the terms of the sale agreement conclusively show that the Commissioner erred in using a basis of $27,764.

Coming to the 1954 transaction, the land here involved was held in the same relationship as the land in the 1953 sale. The purchaser, in this case, O. C. Frey, desiring to acquire the possession and use of this property in 1954 from the life tenant and the fee title, if and when Marlene Fitch, the remainderman, could convey, entered into an agreement with all concerned to place a fund of $75,000 in a trust fund account, the interest to be paid to Ruth Axe during her life, for her life interest and, if Marlene Fitch survives her mother, the bank is to pay the sum of $75,000 to Marlene Fitch and title is to be passed at that time to the purchaser.

The question in this case is whether there was a sale at all. Taxpayers contend this was no sale and not a taxable event. The Government contends it is a sale of the taxpayers present existing interest. Deficiency assessments in the sum of $6,913.51 were assessed against Marlene Fitch on the basis that a long-term capital gain had been realized. A deficiency was assessed against Ruth Axe in the sum of $4,555 on the same basis. I think it again desirable to treat separately each plaintiff regarding the 1954 transaction due to the different status of each, although the Government makes an identical argument in each case as before.

In the case of Marlene Fitch, the Government concedes that her interest is a contingent remainder, and she could not convey a fee title. The Government, however, says that she is selling all she had, i. e., her remainder; that it is alienable, albeit subject to the same contingency in the hands of the purchaser. The plaintiff points out that the Government has misconstrued the facts.

I believe this agreement contemplated passage of fee title. Since this could not be done at this time the agreement was for a future sale. The purchase price, together with the deed to the fee title was placed in trust. If the contingency arises where title cannot be conveyed, the status of the purchaser is that of tenant. Provision is made to prevent waste by the purchaser. These features are not consistent with a present sale. In Robert L. Stearns, 24 B.T.A. 1013, 1018, 1019:

"* * * although a contract to sell is consummated when the parties execute it, a sale, even where the subject of a contract, is incomplete and imperfect until title passes. But a sale is complete when title passes. At that moment, both parties to the sale achieve what they set out to accomplish by the sale. * * * The passing of title irrevocably and finally changes the right of the parties to a sale. A sale is then consummated."

The Government cites Elfreth v. Commissioner, 15 B.T.A. 147, for the proposition that the result would not be different than where the taxpayer sold her remainder subject to a contingency and received cash for it which might have to be paid back. The principle in that case, that the gain realized by a remainderman on the sale of his remainder interest is recognized in the year of sale even though the purchase price must be refunded if the remainder does not become vested, is perfectly sound as applied to those facts, but has no application here. Even assuming this is a sale, this taxpayer is on a cash receipts method of payment. She has received

nothing. She cannot reach and has no control whatsoever over this fund. She has exactly what she had before, an expectancy. The cases cited earlier with regard to money in escrow are equally applicable here. The Government attempts to avoid this by resorting to Section 111(b) of the Revenue Code of 1939 and call this property other than money and allocate the full $75,000 between life tenant and remainderman, by the use of tables assuming vested rather than contingent remainders. Nitterhouse v. United States, 3 Cir., 207 F.2d 618, 620, disposes of this contention where the Court in holding that a Government obligation to pay for property was not property within the meaning of the statute, said:

"We see no policy in favor of either taxpayer or government which would induce us to construe the word 'property' in section 111 in such a strained fashion."

Turning to Ruth Axe, the life tenant, the Government concedes that a life tenant is not taxed individually on the capital gain to a trust since she receives only the income therefrom. United States v. De Bonchamps, 9 Cir., 278 F.2d 127. But argues that if the life tenant, as here, sells his life interest in the trust the gain so realized would be taxable to her. See Bell's Estate v. Commissioner, 8 Cir., 137 F.2d 454.

I agree that this life tenant sold no fee title, but likewise she did not sell her life estate. She merely receives the income from a sum in trust rather than the land. Whatever terminology might be employed to designate what was parted with, if anything, seems unimportant. The question is, was there income realized? Plaintiff has no quarrel with Bell's Estate v. Commissioner. The principle is there recognized and followed of taxation when income is realized. In that case, the life tenant received cash for his interest with full ownership to do with as he pleased. The case has no bearing here. In United States v. Cooke, 9 Cir., 228 F.2d 667, United States v. De Bonchamps, 9 Cir.,

278 F.2d 127, and Weil v. United States, Ct.Cl., 180 F.Supp. 407, all cases where a life tenant was not taxable on capital gains when she or he was entitled only to the income from the same, in spite of the fact that in each case the life tenant actually received the cash to invest and manage. This latter fact entitled the Government to argue the life tenant was a trustee and, therefore, liable for capital gain as a fiduciary. That argument is not asserted here.

I believe there has occurred no taxable event which would authorize the deficiency assessments. Counsel for the plaintiffs will prepare and submit to the Court a Journal Entry of Judgment in conformity with the foregoing opinion.