**Homer L. BRUCE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 65–H–30.**

United States District Court
S. D. Texas,
Houston Division.

Feb. 2, 1966.

**817**

Homer L. Bruce, Houston, Tex., pro se.

Richard M. Roberts, Acting Asst. Atty., Myron C. Baum, Robert L. Waters, O. Jan Tyler, Attorneys, Tax Division, Department of Justice, Washington, D. C., Woodrow Seals, U. S. Atty., and John H. Baumgarten, Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

On January 15, 1965, plaintiff, Homer L. Bruce, filed suit against the United States of America for the refund of income taxes paid under protest by plaintiff for the years 1961, 1962 and 1963. Stipulations of fact were filed by the parties and plaintiff introduced additional evidence at a trial held on November 22, 1965. The question is whether plaintiff need pay income taxes on funds received by him from the Trinity Petroleum Trust prior to the time the total payments exceed his basis in the Trust. This court holds that plaintiff must pay income taxes, subject only to the statutory depletion allowance.

The following facts are taken from the stipulations of fact filed by both parties. Trinity Petroleum Company, hereinafter "Company", owned various oil and gas royalties in five states. Company organized Trinity Petroleum, Inc., hereinafter "Inc.", and on October 1, 1951, conveyed all its royalties to Inc. in exchange for 95% of all income received by Inc. from these royalties. Profits received on the other 5% would go to Company as Inc.'s sole owner should dividends be paid.

This same day Trinity Petroleum Trust, hereinafter "Trust", issued its 192,500 shares of beneficial interest to Company. Company distributed these shares in Trust to Company's shareholders in return for their 192,500 shares of Company.

These transactions left the following situation: Inc. held all the royalties. 95% of Inc.'s royalty revenue went directly to Trust. Any dividends declared by Inc. on the other 5% of its revenues also went to Trust.

Internal Revenue has insisted upon the following treatment of these proceeds: (1) Inc. passes 95% of its royalty income to Trust without taxation consequence. From the 5% it retains, Inc. deducts taxes paid, expenses, and 27½% *depletion* to compute its taxable income. (2) Trust deducts from its total receipts from Inc. taxes paid, expenses, and 27½% *depletion* on the 95% of royalties to compute taxable income. Insofar as Trust pays out to its shareholders an amount greater than taxable income, it pays no taxes. (3) The holder of shares of beneficial interest in the trust divides his receipts into three categories. That portion corresponding to Inc.'s dividends to Trust is taxable as ordinary income, depletion already having been allowed Inc. The remainder corresponds to the 95% paid directly to Trust by Inc. The shareholder reports as ordinary income his portion of Trust's *taxable income* from the royalties. The remainder is not taxable and it corresponds roughly to the depletion allowance claimed by Trust.

Plaintiff and his wife held as community property 6,152 shares of beneficial interest in Trust. Upon the death of plaintiff's wife on October 14, 1959, plaintiff became the sole holder of these shares. They were valued at $37 per share for federal estate tax purposes, and under Section 1014 of the Internal Revenue Code, $37 per share is now plaintiff's basis for all 6,152 shares.

Plaintiff received payments from Trust in 1961, 1962 and 1963 roughly totaling his proportionate share of all Trust's income in these years. Plaintiff did not include any of these proceeds in his income tax returns as taxable income. Plaintiff was subsequently assessed deficiencies as outlined above: (1) income corresponding to Inc.'s dividends to Trust taxable in full; (2) income corresponding to Trust's other *taxable* income taxable in full; (3) additional amounts corresponding to Trust's allowance for depletion not taxable. Plaintiff paid these assessments and instituted the present suit for refund.

### I.

Plaintiff's basic position relies upon the Supreme Court case of Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931). The Supreme Court there held that when it is impossible to determine with fair certainty the fair market value of property held for the production of income, the owner may consider all returns to be returns of capital until he recoups his basis. After that, all sums received are ordinary income.

Plaintiff seeks to bring himself within this rule. He and his witnesses maintain that it is impossible to ascertain the value of the many royalties held by Inc., "many, many tracts in 36 fields in 6 different states." Because Inc. does not have the power to acquire new leases, plaintiff claims it impossible to establish that his basis will ever be realized via the depletion allowances he now enjoys. There is opinion testimony that he never will recover his basis. At the rate of depletion allowed in the years in question, it would take over thirty years of similar production for the allowance to total

up to his basis. With no new leases, plaintiff claims future production will decline.

From these facts and opinions, plaintiff concludes that recovery of his basis is far less certain than it was in the Logan case. There the taxpayer held the right to receive a specified interest in 60¢ per ton to be paid upon the extraction of ore from a mine. The future payment price, 60¢, was certain, and there was only one mine, containing non-fugitive minerals. Yet the Supreme Court said:

"She properly demanded the return of her capital investment before assessment of any taxable profit based on conjecture." Burnet v. Logan, supra, 283 U.S. 413, 51 S.Ct. 552.

Plaintiff maintains that the "conjecture" necessary in the Logan case is only slight compared to that necessary to value Inc.'s royalties. Consequently, he should pay no tax until his full basis of $37 per share is realized.

### II.

Plaintiff has failed to establish the requisite uncertainty necessary to bring him within the Logan rule. A central factor relied upon by the Supreme Court was that it could not foretell with anything like reasonable certainty that the taxpayer would recover her capital investment.

"Respondent might never recoup her capital investment from payments only conditionally promised." Burnet v. Logan, supra, 283 U.S. at 413, 51 S.Ct. at 552.

"Some valuation—speculative or otherwise—was necessary in order to close the estate. It may never yield as much, it may yield more." Burnet v. Logan, supra, at 413–414, 51 S.Ct. at 553.

The latter quotation was followed by an important analogy:

"If a sum equal to the value thus ascertained had been invested in an annuity contract, payments thereunder would have been free from income tax until the owner had recouped his capital investment." Burnet v. Logan, supra, at 414, 51 S.Ct. at 553.

Certainly the distinguishing point about an annuity contract is that one never knows if the holder will live long enough to recoup his capital investment. The prospect of receiving income or interest is most uncertain. (It is interesting to note that despite this uncertainty, the Code *today* requires certain annuity payments to be apportioned between return of capital and income according to actuarial statistics. See Section 72 of the Internal Revenue Code.)

The Court of Appeals for the Sixth Circuit recently stated the rule of Logan to be:

> "Determination of the issue (whether income taxes are due before capital investment is recouped) turns on the question of whether the investment * * * is of such a speculative nature that the purchaser * * * cannot be reasonably certain of ever recovering his cost (citing Burnet v. Logan)." Darby Investment Corp. v. Commissioner of Internal Revenue, 315 F.2d 551, 552 (C.A.6th, 1963).

Plaintiff cites two federal cases illustrating applications of Logan. Both cases strongly reinforce the crucial role in Logan of the certainty of return of capital. In Helvering v. Drier, 79 F.2d 501 (C.A.4th, 1951), the taxpayer had been awarded damages plus interest, the annual payments of which were conditioned upon annual receipt by the United States of war debts from Germany. The court refused to consider any portion of payments made to be payments of interest (and thus taxable income) until plaintiff received the principal sum due.

> "Hence it has been doubtful ever since the award of 1929 was made whether the taxpayer ever would receive payment thereof in full. Under these circumstances, we agree with the Board that the case is governed by the rule in Burnet v. Logan * * *" Helvering v. Drier, supra, 79 F.2d at 503.

In the second case relied upon by plaintiff, Axe v. United States, 191 F.Supp. 671 (D.Kan.1961), the court applied the Logan rule because there was uncertainty as to whether any payment, capital or income, would ever be made.

In summary, Logan and subsequent cases clearly establish that before income taxes will be deferred until capital has been recouped, there must be uncertainty as to whether the taxpayer's basis will ever be recovered. Plaintiff's basis for his shares of beneficial interest in Trust is $37 per share. It is stipulated that plaintiff has received the following per share payments from Trust:

| 1960 | $ 3.37 |
|------|--------|
| 1961 | 3.755 |
| 1962 | 4.58 |
| 1963 | 4.97 |
| 1964 | 5.15 |

Payments for the five year period total $21.825 per share, well over one-half plaintiff's basis in the shares. The amount has increased each year. From these facts and the detailed information about the royalties presented to this court, this court holds that there is strong reasonable certainty that plaintiff will recoup his basis in the shares.

Plaintiff introduced evidence at the trial that he will never recoup his basis *through the deductions presently allowed plaintiff*. Plaintiff has at no time maintained that any uncertainty exists as to whether he will recoup his basis in the shares. The contention which plaintiff does advance relates to the function of the depletion allowance.

The deductions presently allowed plaintiff are essentially Trust's depletion allowance of 27½% on the 95% royalties it receives from Inc. Each year plaintiff excludes from taxable income an amount roughly corresponding to his proportionate share of Trust's depletion deduction and deducts it from his basis. This amount for plaintiff per share was:

| 1960 | $ .99 |
|------|-------|
| 1961 | 1.09 |
| 1962 | 1.32 |
| 1963 | 1.44 |
| 1964 | 1.50 |

The five year total was $6.34 and the amount has increased each year. At the average rate of $1.27 per year experienced in these five years, it would take plaintiff 24 more years to reduce his basis to zero. Plaintiff and his witnesses maintain this will never happen. In reality, plaintiff maintains that the 27½% apportionment is insufficient.

This court by no means accepts plaintiff's predictions. No holding on the matter is required, because Congress has resolved such matters by the 27½% depletion allowance. Section 613 of the Internal Revenue Code.

Production from a single oil or gas well presents much the same difficulties of capital-income allocation as does Trust's "many, many tracts in 36 fields in 6 different states." The difficulties are both technical (how much oil reserve exists) and conceptual (whether the production of oil is a mere conversion of capital investment or an income producing operation). Congress resolved these difficult problems by providing the 27½% depletion allowance; 27½% of the oil or gas produced is not subject to taxation. The figure is arbitrary and represents a concession to the capital conversion aspects. Anderson v. Helvering, 310 U.S. 404, 406, 60 S.Ct. 952, 84 L.Ed. 1277 (1940). It does not purport to reflect the precise or even closely approximate percentage of production which is capital conversion in a single tract, a thousand tracts, or even in the entire petroleum industry. It reflects only the existence of a capital conversion element in an arbitrary, but time-honored amount.

Certainly a taxpayer is not limited to the 27½% depletion figure. He may, for example, use cost depletion under Section 612 of the Internal Revenue Code. However, plaintiff seeks to escape the limitations of the 27½% depletion allowance by pointing to the very uncertainties which it exists to resolve. If plaintiff were to establish that it is uncertain as to whether he will ever recoup his basis, then Logan might apply and supplant depletion. However, plaintiff disputes something different, whether 27½% depletion will ever reduce his basis to zero. This does not bring Logan into play and only speaks to the proper apportionment of capital return and income. Plaintiff asserts that this alleged uncertainty entitles him to treat all revenues as returns of capital until he recovers his basis. Section 613 provides that this uncertainty is resolved by the arbitrary allocation of 72½% income, 27½% principal.

Thus, Section 613 resolves difficulties of apportionment similar to those which called the Logan rule into play in the cases of Inaja Land Company, Ltd., 9 T.C. 727 (1947), and Anton L. Trunk, 32 T.C. 1127 (1959).

Plaintiff also complains that he is allowed no depletion on his receipts from the dividends of Inc. Inc. is allowed depletion on its royalties. Plaintiff cites no authority that a shareholder is entitled to depletion or depreciation of any kind on the assets of a corporation, nor has plaintiff pointed to a single instance where the Logan rule has been extended to a shareholder due to uncertainties concerning a corporation's assets.

### III.

There is an additional fact which clearly demonstrates that plaintiff is not within the Logan rule. Shares of beneficial interest in Trust are regularly bought and sold "over-the-counter" through various brokers. Since 1959 the low for such shares has always been greater than plaintiff's basis of $37 per share. The high and low bid prices were:

|      | 1960 | 1961 | 1962 | 1963 | 1964 | 9/15 1965 |
|------|------|------|------|------|------|-----------|
| Low  | 38   | 49   | 52   | 58   | 83   | 91        |
| High | 45   | 52   | 58   | 83   | 96   | 96        |

Recent selling prices more than twice plaintiff's basis reflect a virtual certainty that plaintiff will recover his basis by holding the shares of beneficial interest. They further tend to indicate that plaintiff will recoup his basis through depletion as well (a question which this court does not decide). This is because market price is a form of valuation of the thing itself. These high market prices reflect the degree of certainty that plaintiff will receive payments in the future which will exceed his basis.

The market prices also perform a second and distinct role. They provide a means by which plaintiff can certainly recover his basis. Plaintiff can sell his shares. Of course, plaintiff is not required to sell his shares. This second point is that plaintiff has at hand a certain means of recovering his basis, which defeats the rule of Logan.

Courts have not always distinguished these two roles of market value—reflection of value and alternative means of recovering basis. However, the existence of a certain market value in excess of basis has always been held to remove the uncertainties relied upon in Logan.

In Chamberlin v. Commissioner, 286 F.2d 850 (C.A.7th, 1960), cert. denied 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the court required that patent royalties be reported as ordinary income. Though the court relied on the view that Logan hinged on uncertainty as to return of capital (see part II of this opinion), not on a lack of ascertainable value, it found the sale of only twelve shares of stock in sixteen months to help establish ascertainable value. By contrast, as many as 8,514 shares in Trust have been sold in a single year.

In Darby v. Commissioner, supra, existence of a market value was heavily relied on to show that the taxpayer was reasonably certain to recover his investment. Two cases applying Logan were distinguished. In Phillips v. Frank, 295 F.2d 629 (C.A.9th, 1961), the court said:

"There is no evidence in the record that such rights had any market value * * * or any other value in excess of taxpayer's cost. There is no evidence in the record that taxpayer at any time could have sold such contracts at a profit. *The only source* from which he might reasonably expect to realize any part of his profit is from periodic payments subsequent to the return to him of his invested capital. * * * A return of capital is not income." (emphasis supplied) Phillips v. Frank, supra, at 633–634.

The court relies here on market value as an alternative means of recovering capital which, if present, would defeat the application of Logan.

The second case distinguished was Willhoit v. Commissioner, 308 F.2d 259 (C.A.9th, 1962). The court refused to hold that the taxpayer would probably realize more than his investment, noting that there was no market for the contracts involved.

In summary, the existence of a ready market price far above plaintiff's basis defeats the application of Logan in two ways: it establishes a virtual certainty that plaintiff will recover his basis through ownership of the shares, and it provides an alternative, certain means by which plaintiff can recover his basis. Even without consideration of this high market price, the evidence is sufficient to establish that the uncertainties relied upon in Logan are not present in plaintiff's situation.

Capital gain or loss is usually determined by liquidation.

Judgment will be entered for defendant. Clerk will notify counsel to draft and submit judgment accordingly.